## Kent *v.* Phelps.

In the Court below,

OLIVER L. PHELPS, *plaintiff ;* BENAJAH KENT, *defendant.*

THIS was an action on a promissory note.

The defence set up was *usury.*

On the trial to the jury, a deposition of *Seth P. Staples,* Esquire, was read, which, it was agreed, was true, and contained all the evidence in the case. It was, in substance, as follows: *Thomas Service* of New-York sent to *Staples* at New-Haven, an account against the defendant, for collection. Soon afterwards, *Staples* went to Suffield, where the defendant lived, to collect, or secure the debt. The defendant

The including in a note, given as security for an antecedent debt, a fair and reasonable charge for the expenses of the creditor in securing the debt, is not usury ; and whether such charge was fair and reasonable is a question of *fact* to be left to the jury.

Whether the including *seven per cent* interest in a note taken in this state, as security for a debt contracted in New-York, was a cover for usury, is also a question of *fact* to be left to the jury.

1807.

FRINK
*v.*
SCOVEL.

1807.

KENT
*v.*
PHELPS.

said he could not pay it, and requested *Staples* to take his note at ninety days.   *Staples* said he would not take it, unless the defendant would include his expenses to Suffield, and *seven per cent* interest on the account.   *Staples* also told him, that if he did not pay, or secure the debt, he should attach his property.   The defendant assented to the terms proposed, and accordingly executed his note, payable ninety days after the date to *Oliver L. Phelps*, and by him indorsed, including twelve or thirteen dollars for expenses, and *seven per cent* interest on the account up to the end of the ninety days.   The account consisted of charges for goods bought in New-York at different times, and of a promissory note there executed.

The only question in the case, was, whether this evidence was sufficient to prove a corrupt and usurious agreement between *Service* and the defendant.   The court were of opinion, that the expenses arising in obtaining the note might be lawfully included in the same ; and directed the jury, that if they should be of opinion, that the sum included on that account was a reasonable allowance, and not a skreen or colour for usury, they must find for the plaintiff ; otherwise, for the defendant.   With respect to the interest computed and included in the note, at the rate of *seven per cent* up to the time when the note became due, the court were of opinion, that the same was computed and included lawfully ; and directed the jury, that notwithstanding this last objection, they must find for the plaintiff.   The jury returned a verdict for the plaintiff accordingly ; and the defendant filed his bill of exceptions to the direction of the court.

*N. Terry*, and *Bradley*, for the plaintiff in error.

1. The money in this case, demanded by the agent of *Service*, and secured by the note in suit, under the denomination of *fees*, was claimed on the one part, and assented to on the other part, only upon the ground of the proposed forbearance.   The nature and amount of this demand evince,

that it could not have been proposed, or complied with, in any other light than as the proffered consideration of the loan and forbearance of the debt. There was no obligation, either legal or moral, on *Kent*, to pay such a sum as this to his creditor for threatening to sue him, unless he would procure additional security ; and any pretence ought to be as available as this expedient resorted to by these parties, for the purpose of securing illegal interest in this contract.

2. But the great question in this case, is, whether the *seven per cent* interest computed upon these debts, and included in the note in suit, brings this contract within the statute of usury in this state ? And here it may be premised, that the law of the jurisdiction where a contract is made, must govern it.

But every inquiry, for this purpose, respecting the place in which a contract is made, must, from the nature of it, be not a matter of law, but an inquiry respecting a mere *matter of fact*. In the present case, this fact is clearly stated in the bill of exceptions, in which it is alleged, that a note of hand executed in New-York, and a book account there contracted, were agreed, at Suffield, to be added together, and interest computed upon both, at the rate of *seven per cent*, for ninety days then future ; to which sum this demand of fees was to be added, and a new note to be given therefore, indorsed by *Phelps*, and delivered for the benefit of *Service ;* and that this agreement was executed at Suffield. When the new note was executed, these former claims were delivered up in fact, and satisfied in law. They were the consideration of the new contract, and were extinguished by it, and in no sense any longer subsisting.

A note executed in London promising to pay a sum of money, and lawful interest, would carry *five per cent ;* and if that note were sent to the debtor in this state, and renewed in the same terms, it cannot be doubted, but that it would then carry *six per cent* interest, and because the contract

was then made in this state. And a note made in New-York, and made payable with lawful interest, carries *seven per cent ;* and if renewed by the debtor in this state, and in the same terms, it would then, for the same reason, carry only *six per cent,* the debt in the former being only the measure of the loan in the last note. If the note in suit, then, had been simply made payable with interest, that interest would have been *six per cent,* and because a higher rate of interest would be unlawful ; and then it follows, that the *seven per cent* included in the principal sum of this note is unlawful.

Debts contracted in England, and secured by mortgage on estates in Ireland, and the West-Indies, have been adjudged usurious, when carrying the higher rate of interest which is legal in those places. (*a*) And a bond made in the West-Indies, and carrying the rate of interest lawful there, was renewed in England. retaining the same rate of interest, and adjudged void. (*b*)

To constitute a contract usurious three things must concur. There must be a loan, a forbearance agreed, and a reservation or taking of more than the legal rate of interest in the place where the contract was made. It has been often decided, and never contradicted, that an agreement to forbear an antecedent debt was a loan, within the statute of usury. In this case, there was an actual agreement of forbearance for the period of ninety days ; and the note in suit was drawn accordingly. The interest actually reserved upon this loan was *one per cent* more than by the law of the state can be reserved on contracts made within the state.

But it may be said, that usury consists in the *intention ;* and that, as the old securities carried the same rate of interest, which was included in the new note, it cannot be supposed, that in this transaction there was any design of violating the law.

(*a*) 3 *Atk.* 727, *Stapleton* v. *Conway,* S. C. 1 *Ver.* 427.
(*b*) 3 *Term Rep.* 425, *Dewar* v. *Span.*

To this it is answered, that a mistake of a matter of fact may be a sufficient defence ; as if it were claimed, that this rate of interest was included by a mistake in computation ; but not so of a matter of law. It is a proposition universally true, that an ignorance of the law excuses no man ; and if it could, for a moment, be supposed, that a defence so preposterous were admitted by any human tribunal, it would be an indulgence wholly useless, by the improbability of proof, except derived from the inadmissible declarations of the party. In the present case, it is agreed, that it was meant to include *seven per cent* interest ; and if that be an unlawful rate of interest, then it was meant, and intended, to reserve unlawful interest in this note. Besides, if this creditor was willing to take a new note, for the purpose of compounding his interest, reducing his several securities to one, and obtaining the guaranty of *Phelps* for the eventual payment of the whole debt, he ought and must be satisfied with these advantages, and the legal interest of the jurisdiction where this business is transacted.

If this note did, upon the face of it, carry *seven per cent* interest, it would not be pretended, that it was not void ; and because the contract, and the note in pursuance of it, were made in this state ; and yet it is certain, that by including this rate of interest in the principal of the note, the statute is equally violated.

But it may be said, that this is not a case of oppressive usury ; and to apply the statute of usury to it would be an extreme hardship. To which it is answered, that this statute is not founded upon principles of justice, but upon calculations of policy ; that in its application to particular cases it always operates a great hardship ; and if this be a reason why it should be repealed, it is no reason why the judiciary should repeal it.

The case of *Nichols* v *Cosset*, (c) may be cited against

(c) 1 *Root* 294.

1807.

KENT
v.
PHELPS.

us ; but on a particular examination, it will not be found to op-
pugn any principle for which we contend. In that case, the
son, at the instance of his father, did, at New-York, assume his
father's debt, securing *seven per cent* interest ; and the fa-
ther, on that account, did, at Waterbury in Connecticut,
give him a deed of land, defeasible upon payment of the debt
so assumed, and interest at more than *six* and less than *se-
ven per cent.* In the principal case, there was a loan of the
antecedent debts, and agreed forbearance of this loan for
the period of ninety days, and, on account of this forbear-
ance, interest was reserved at the rate of *seven per cent.*
But in the case cited, there was no loan ; the son advanced
nothing, either directly to the father, or indirectly for him ;
nor did he give a new credit for an old debt, without which
there could be no loan ; and where there is no loan, there is
no usury. It was, indeed, agreed, that the payment should
be deferred ; and this was because payment of the debt as-
sumed by the son was postponed, but not to draw in the father
to pay for this delay. And the reservation of more than
*six per cent* was not because the son had agreed to forbear
an old or new debt, for the father owed him nothing ; but
because the son, at the same time, agreed to pay the father's
debt, which carried *seven per cent* interest. In a question
of usury, or not, the *forms* of a contract are of no conse-
quence ; but the inquiry is, what is the design and sub-
stance of the agreement? Here, the son had assumed a
debt carrying *seven per cent* interest, and the father agreed
to indemnify him. The case goes expressly on the ground,
that the son had become bound in New-York, to pay the debt
of the father, which bore *seven per cent* interest ; and therefore,
the mortgage of the father, made in Connecticut, to secure to
the son the payment of the principal, and the same rate of in-
terest, was lawful ; but the decision would have been equally
correct, if the son had become bound in Connecticut, to pay
the father's debt, which bore *seven per cent* interest : for a
surety is entitled to indemnity, even if he satisfies an usurious
contract , and the mortgage was, in substance, a contract to
indemnify the son.

It appears from this bill of exceptions, that the Superior Court directed the jury, that the reservation of *seven per cent* included in this note did not render the contract usurious. But whether usury, or not, is a question of law arising from the facts ; and in undertaking to decide both the facts and the law, in this manner, the court have clearly mistaken their duty, and transcended their powers.

*Staples*, for the defendant in error, contended,

1. That the sum included in the note for *expenses* was fair and reasonable. The original contract was, that *Kent* should pay the principal and interest, when due, and in New-York. Now, if he failed to perform his contract, and, in consequence of his neglect, *Service* was obliged to send to Suffield for his money, it is right that his expenses should be reimbursed.

From the authorities (*b*) it is very clear, that a charge of this kind, in addition to the legal interest, may be included, without making the transaction usurious. The case of *Hammett* v. *Yea* is directly in point ; and is, indeed, a stronger case than the present. In that, it was decided, that the transaction was not usurious, because the surplus of interest taken by the banker might be referred to the expenses of remittance. But in this, the evidence is express, that the extra sum was included for expenses, *and so the jury have found*. There can be no doubt, but that this was a question proper to be left to them to decide.

2. That the correct application of the rule as to the *lex loci* will make this transaction governable by the laws of New-York. The *debt* was contracted *there*. *Kent* there engaged to pay the principal, and *seven per cent* interest until

(*b*) 1 *Bos. and Pul.* 144, *Hammett* v. *Yea.* 2 *Term. Rep.* 52, *Auriol* v. *Thomas*.

P p p

1807.

KENT
*v.*
PHELPS,

the principal should be paid. All that was required, with regard to the interest, when the note was taken, was, that he should fulfil this engagement. New security was, indeed, taken here ; but it was only for what the debtor, on the original contract, would, in our own courts, be compellible to pay. Where the writings happen to be drawn is a matter of no consequence : it is *the contract which is covered*, that is to be regarded. Suppose A. should take up goods in New-York of B. upon six months credit, with interest after three, and at the end of three months, B. should come into Connecticut, and take a note of A. at three months, including the interest of New-York, according to the understanding at the time of sale, would this be usurious ? In *Champant* v. *Lord Ranelaugh*, as reported both in *Prec. Chan.* 128, and 1 *Eq. Ca. Abr.* 289, *pl.* 2, the debt was contracted in Ireland, and the security given in England ; and it was held, that Irish interest should be allowed. In *Nichols* v. *Cosset, (c)* it was decided, that a mortgage deed, securing a certain sum with *seven per cent* interest, executed in this state, to indemnify the mortgagee against an obligation given in New-York, bearing the same interest, was not usurious.

This is very distinguishable from that class of cases, wherein it has been held, that contracts made in England for more than *five per cent,* secured by mortgages in the West-Indies, are usurious. There the *lex loci* is undoubtedly that of England ; the contract covered by the security is made, and to be performed, in England. That the estate pledged for the performance of the contract lies in a foreign country cannot affect the nature of the contract itself.

Further, here was no usurious intent. Both parties thought they were lawfully carrying into effect the original contract in New-York. Will the Court presume usury contrary to the manifest intent of the parties ?

(c) 1 *Root* 294.

THE COURT were unanimously of opinion, that the direction to the jury, on the first point, was correct ; but reversed the judgment. CHESTER, BRACE, E. GOODRICH, and HOSMER, *Assts.* dissenting, on the ground, that it ought to have been left to the jury, as a question of *fact* for them to decide, whether the whole transaction was, or was not, a cover for usury.