## LLOYD *against* KEACH.

THIS was an action on a promissory note. The plaintiff sued as indorsee.

The cause was tried at *Hartford, February* term 1817, before *Trumbull, Hosmer* and *Gould,* Js.

The note was given in the course of business, by the defendant, to *Samuel Pettes,* being payable to him, or order, at the *Hartford* bank ; and was, by *Pettes,* indorsed to the plaintiff. The defendant introduced evidence to prove, that the note was sold by *Pettes* to the plaintiff ; and that upon such sale, there was taken and reserved by the plaintiff, more than at the rate of six *per cent. per annum.* The plaintiff, on his part, introduced evidence to shew, that he had purchased the note fairly, and without usury ; that the whole transaction between him and *Pettes* was *bona fide,* and upon good consideration ; and that the defendant, the maker of the note, was, at the time of the sale, in failing circumstances. The plaintiff thereupon prayed the court to instruct the jury, that the *bona fide* sale of a bill or note, by an indorser, the maker being in doubtful circumstances, at a greater discount than at the rate of six *per cent. per annum,* is not a usurious contract ; and consequently, if they should find that the negotiation of the note in question, by *Pettes* to the plaintiff, was *bona fide,* and not a cover for usury, whatever might have been the discount, they must find for the plaintiff. The plaintiff also prayed the court to instruct the jury, that although they should find, that the transaction between *Pettes* and the plaintiff was usurious, as between them ; yet that the maker of the note could not take advantage of this circumstance in an action against him on the note. The court charged the jury as follows : " The question in this case, is, whether the transfer of this note, by *Pettes* to the plaintiff, was a fair, *bona fide* sale of the note ; or, was only a cover for a usurious loan of money, by the plaintiff to *Pettes.* If a man borrow money, and give a note for a greater amount than the sum borrowed and interest, this is usury ; and if he sell the note of another person payable to himself, in the same manner, and indorse it over to the lender, this is equally usury. If, then, you shall find, that *Pettes* transferred this note to the plaintiff, at a discount greater than lawful interest, and

The sale of a promissory note, indorsed by the seller, at a discount exceeding the lawful rate of interest, is not in all cases usurious, but is *prima facie* valid ; and it is incumbent on the party claiming it to be usurious to shew the circumstances which bring it within the statute.

In an action against the maker of a promissory note, which was valid in its inception, brought by an indorsee, who took it of the payee on a usurious consideration, the defendant may avail himself of such intermediate usury to impeach the plaintiff's title to sue.

*New-Haven,*
*June, 1817.*

Lloyd
*v.*
Keach.

indorsed it in such a manner as to become responsible thereby to the plaintiff, for the full amount of the note, the transfer is usurious,—the transaction is a cover for usury,—and your verdict must be for the defendant; otherwise, for the plaintiff."

The jury found a verdict for the defendant; and the plaintiff moved for a new trial, on the ground that the court in omitting to give the charge requested, and in giving the charge above stated, mistook the law. The questions of law arising on this motion were reserved for the consideration and advice of the nine Judges.

*Candee,* in support of the motion, contended, 1. That there was no usury in the transaction in question. To constitute usury, there must be *a loan of money,* directly, or indirectly. There is no pretence of a loan *in form.* Nor was the transaction *substantially* a loan. No design to evade the statute was proved, or found. Whether the transaction was a cover for usury, was not submitted to the jury. The case discloses nothing but a fair sale of the note of a third person, with a conditional warranty by the seller. This has never been held to constitute usury, though the discount were greater than the lawful interest. *Musgrove* q. t. v. *Gibbs,* 1 *Dall.* 217. *Kenner* v. *Hord,* 2 *Hen. & Mun.* 14. There may be good reasons for making an extra discount, aside from the use of the money for the time the note has to run; such as the trouble and hazard of collecting, giving seasonable notice to the indorser, &c. Long and universal custom has sanctioned the sale of bills of exchange, at any rate of discount which the parties may agree upon; and it is observable, that in such case, the seller generally, if not always, indorses the bill.

2. That admitting that there was usury between the payee of the note and his assignee, it constitutes no defence in an action against the maker. There was no usury in *his* agreement. *Bush* v. *Livingston & al.* 2 *Caines' Ca.* in err. 66. 80, 1. 84. *Littell* v. *Hord, Hardin* 81.

*T. S. Williams* and *W. W. Ellsworth,* contra, contended, 1. That the indorsement in question was usurious and void as between the indorser and the indorsee. It was virtually giving a bill of exchange, drawn by *Pettes* on the defendant,

in favour of the plaintiff, as security for a sum of money loaned by the plaintiff to *Pettes*, at a higher rate of interest than the law allows. If such had literally been the transaction, it would be a clear case of usury. The difference is only a difference in circumstance, not in principle. The indorser is liable in the same manner, and to the same extent, as the drawer of a bill. That a transfer like the one in question is usurious, seems to have been taken for granted, by the counsel on both sides, and by the court, in *Rich* v. *Topping*, 1 *Esp.* 176. *Brard* v. *Ackerman*, 5 *Esp.* 119. *Jones* v. *Brooke*, 4 *Taun.* 464. and *Churchill* v. *Suter*, 4 *Mass. Rep.* 156. It is also evident from the opinion of Lord *Kenyon* in *Daniel* v. *Cartony*, 1 *Esp.* 274. and of the court in *Foltz* v. *Mey*, 1 *Bay* 479. that the transfer in each of those cases would have been held to be usurious, if the plaintiff had been privy to it.

2. That if the transfer was usurious, the defendant can avail himself of it as a defence to this action. The plaintiff must make out his case. His only title to sue is by virtue of the indorsement. If that was usurious, it is void to all intents and purposes. He has no more right to sue the defendant than if the indorsement had been forged. The case of *Strong* v. *Tompkins & al.* 8 *Johns. Rep.* 98. is analogous.

SWIFT, Ch. J. The question presented by this motion, is, whether the sale of a promissory note, accompanied with the indorsement of the seller, with a warranty of the ability of the maker to pay it, is, in all cases, usurious.

It has been said, that the charge was made with reference to the particular circumstances of the case, and if not correct as a general proposition, it would be correct as applicable to this case. But the circumstances are not detailed in the motion. It appears, that the plaintiff claimed to be a purchaser of the note. No facts are disclosed to shew it was a pretended sale, and in substance a loan. It merely appears, that the note was indorsed and warranted : and the court explicitly say, that the sale of a note at a greater discount than six *per cent. per annum*, endorsed with warranty, is usurious ; and direct the jury, if they find the note was thus transferred, they must bring in their verdict for the defendant. This is laying down the proposition in the broadest terms ; and it is not applicable to the special circumstances of a particular case. The real question, then, is, whether

*New-Haven,*
June, 1817.

Lloyd
*v.*
Keach.

the sale of a note at such discount, with warranty, is in all cases usurious? If a case can be stated in which such sale would not be usurious, then the charge was incorrect.

These principles will not be denied ; that to constitute usury, there must be a loan, directly or indirectly ; that a real sale, without any intent to loan, though it may be oppressive, cannot be usurious ; that promissory notes are as much the subject of sale as any other property ; that they may be sold at any discount ; and that they may be sold either with, or without, warranty. Having premised these remarks, the question is to be considered, whether a note cannot be sold at a greater discount than six *per cent. per annum,* and warranted, without being usurious.

Suppose a man should offer a note for sale, against another in *Georgia,* of large property. Though it might be certain that it would be paid, when presented ; yet the expense of sending for, and the hazard of remitting, the money, would render it of less value than cash. The sale of a note under such circumstances, though warranted, would not be usurious. This principle may be illustrated by the case of bank bills. During the late war, the bills of banks who refused to pay specie, though there was no doubt of their ability, passed at a discount. So the bills of distant banks, though of undoubted credit, commonly pass at a discount ; and yet it never was pretended, that this was usury. It is true, the cases are not precisely similar, as it is not the practice to indorse and warrant bank bills. But suppose the seller should indorse and warrant a bill against a bank, which met all their demands with punctuality ; will it be seriously pretended, that this will make the transaction usurious? And yet, on the principle contended for, in this case, such would be the effect of warranting a bank bill, where it passed at an extra discount. Indeed, it is evident that there may be many cases, where there is good reason for selling a warranted note at an extra discount. Of course, a mere warranty cannot, in all cases, convert a sale into a loan, and make it usury.

But the argument relied on, is, that the indorsing and warranting a note, is drawing a bill of exchange ; and that the drawing a bill of exchange for more than is received, would be usurious. There is no question but that the indorsing and warranting a note, is like drawing a bill, as it

respects the obligations and liabilities created by it.   But to make the analogy complete, we must consider it to be the sale of a bill of exchange at an extra discount ; for if the indorsing and warranting a note, is drawing a bill, then selling a note so indorsed and warranted, is selling a bill ; and the question then will be, whether a bill can be sold at an extra discount, without being usurious.   The argument takes it for granted, that the disposing, in any shape, of a bill of exchange, at an extra discount, is usurious ; but this is begging the question. It is manifest, that no article is more properly the subject of sale than a bill of exchange ; that the price depends on the demand, as well as various other circumstances, like any other property ; and is sometimes above, and sometimes below, par.   Of course, the fair sale of a bill, in the regular course of business, at any discount, is not usurious.

This, as it respects foreign bills, is not questioned.   But it is insisted, that there is a difference between foreign and inland bills, owing to the different circumstances under which they are negotiated.   There is, however, no ground for such distinction.   Where there are reasons to justify it, an inland bill may be sold at an extra discount as well as a foreign ; and in many cases, the same reasons for such discount, may exist in both kinds of bills.   Their value will be determined by the rate of exchange between the places where drawn, and on which they are drawn, and the expense, difficulty, and delay of negotiation.

It is true, discounting bills of exchange may be made an instrument to practice usury ; but where this is a shift to evade the statute, it will be usury.   So that the enquiry will be, whether it was a real sale in the regular course of business, or a colourable sale, with intent to disguise a loan, and evade the statute against usury.

It has been said, that the sale of a warranted note, at an extra discount, is *prima facie* evidence of usury ; and that it behoves the party claiming by it, to shew the circumstances which take it out of the statute.   But such sale cannot be *prima facie* evidence of usury ; for it is valid, unless it be a loan in disguise ; of course, the burden of proof lies on the party claiming it to be usury ; and it is necessary for him to shew the circumstances which bring it within the statute.

*New-Haven*,
June, 1817.

Lloyd
*v.*
Keach.

*New-Haven,*
June, 1817.

Lloyd
*v.*
Keach.

Much reliance has been placed upon the case of *Churchill* v. *Suter*, 4 *Mass. Rep.* 156. That was a note made to raise money ; it was indorsed, and delivered to a broker to negotiate in the market, who indorsed and sold it. Chief Justice *Parsons* says, " A note may be sold at a greater discount than the legal interest, without being usurious. This usually happens, when the holder doubts the solidity of the persons holden to pay, and therefore sells it, without his own guaranty, at a greater than the legal discount, on account of the hazard." But in that case, he remarks, the purchaser " took the guaranty of all persons, who ever had any interest in the note, and even of the broker." He therefore considers the transaction to be usurious. The only point settled by this case, is, that the warranty of a note proves it was not sold at an extra discount by reason of the doubtful credit of the maker. This is true ; and if there could be no other reason for selling a note at an extra discount, it would shew the charge to the jury, in this case, to be right. But it is unquestionably true, that other good reasons may exist for selling a note at an extra discount ; such is the case of the sale of a note against a man in *Georgia*, before mentioned. Of course, the case of *Churchill* v. *Suter* does not prove the proposition, that the sale of a warranted note at an extra discount is, in all cases, usurious.

I apprehend, that the correct principle is, that a note may be sold at any discount ; but though there be a sale in point of form, yet if it is merely colourable, to evade the statute, and the transaction is in substance a loan, then it will be usurious. The warranty will be an item of evidence to ascertain the nature of the transaction ; it will prove that the discount could not have been made on account of the doubtful circumstances of the maker of the note ; but it cannot be, in all cases, evidence, of itself, of usury.

A question has been made by the plaintiff, whether, admitting the indorsement to be usurious, the defendant can take advantage of it. On this point there can be no doubt. The indorsee of a note must shew a legal right ; that he came lawfully by the possession of it ; to entitle him to recover. Of course, it is competent for the defendant to shew, that he had no legal right, or that the possession was not lawful.

I think a new trial ought to be granted.

New-Haven,
June, 1817.

Lloyd
v.
Keach.

**Trumbull, J.** The general rule contained in the charge, and claimed to be incorrect by the motion, regards negotiable notes only, and has no reference to bills of exchange, whether inland or foreign.

It appears by the plaintiff's declaration, that the note in question is a promissory note, executed, by the defendant, to *Samuel Pettes,* or order, payable at the *Hartford* bank ; that it was indorsed, with warranty, by said *Pettes* to the plaintiff; and that all the parties are inhabitants of this state.

The first position in the charge to the jury, that " if a man borrow money, and give his note for a greater amount than the sum borrowed and lawful interest, this is usury," is admitted to be correct ; and the second, " that if a man sell and transfer the note of a third person to himself at a discount, greater than the lawful interest, and indorse the note in such a manner, as to become thereby responsible to the purchaser for the whole amount of the note, this is also usury," appears to me equally correct, and exactly similar in principle. The indorser of a note with warranty, contracts that the note shall be paid in full, and that he will pay it, if it be not paid by the maker, according to its tenor. This is equivalent to a new promissory note for the same sum ; in the same manner as the indorsment of a bill of exchange is considered in law, as a new bill. Indeed, the correctness of this principle, as a general rule, appears not to be disputed. It is recognized in sundry cases cited at the bar, and particularly in the case of *Churchill* against *Suter,* 4 *Mass. Rep.* 156.

But it is urged, that there may be exceptions ; and such, indeed, there may be to every general rule. Hence the maxim, *Exceptio probat regulam.* But he, who would take advantage of an exception, must claim and show, that his case comes within it, and is exempt from the operation of the general rule. No such claim is pretended in this case.

Had the plaintiff in the court below claimed, and adduced evidence to prove, that any facts or circumstances existed in this case, which might bring it within any such exception, and show the transfer to have been a fair *bona fide* sale, it would have been the duty of the court to charge the jury as to the questions of law arising on such facts, and submit the evidence to their consideration.

*New-Haven,*
*June, 1817.*

Lloyd
*v.*
Keach.

Nothing of this sort is claimed in the motion ; and it was not the duty of the court to charge the jury, as to points of law not claimed, or facts that never existed. Were it otherwise, no general rule of law could be stated in a charge, unless the court also state all the possible cases, which might form exceptions to the rule, though there should be no claim, that the case on trial would come within any of them.

Whatever may be our opinions respecting the policy of our laws against usury, the disproportion between the penalties and the offence, or the honour and honesty of the borrower, who takes advantage of the statute, to retain the money, and avoid his contract ; yet while those laws exist, without change or modification, it is the duty of judges to enforce them, and never to give their sanction to any device, contrived for the purpose of eluding their operation.

I am of opinion that the charge is correct, and no new trial ought to be granted.

EDMOND, and BRAINARD, Js. concurred in the opinion given by the Chief Justice.

SMITH, J. In this case, the court on the circuit charged the jury, that to sell a note at a discount exceeding the lawful interest, and to indorse the note so as to render the indorser liable in case of non-payment, is usury. They assume the principle, that the least degree of discount in the sale, beyond the lawful interest, under such circumstances, is *prima facie* usurious, and standing unexplained, by the indorsee, must destroy the assignment.

There may be cases, no doubt, where a transaction, may be *prima facie* a sale of a note, or other property, and in substance a loan of money, and be designed by the parties as a mere evasion of the statute of usury. But I know of no case, where the transaction assumes, upon the face of it, the appearances of a purchase and sale, that the court, as matter of law, can pronounce the contract usurious.

To constitute usury, there must be a *loan ;* and in these cases, there is *prima facie* no loan, though I admit, there may be in fact. But if so, it is like all other disputed facts, to be found by a jury. Whenever a contract, upon the face of it, is a mere sale of property, and this is claimed to be usurious, the only question which can be made, is, whether it was

*bona fide* a *sale,* and if found to be such, it cannot be usurious, however unequal the terms of such contract may be. But if it was not *bona fide* a *sale,* and was designed by the parties to disguise a real loan, and thus evade the statute ; then, it may be usurious. And these are all matters to be left to a jury.

<div style="float:right; text-align:center;">*New-Haven,*<br>June, 1817.<br>Lloyd<br>*v.*<br>Keach.</div>

I think, therefore, that the charge in this case was incorrect, and that a new trial ought to be granted ; although the facts admitted might be sufficient to warrant a jury to find the contract usurious.

I am not of opinion, however, that the facts admitted in this case authorize the conclusion that the contract is usurious. The only facts relied on are, that the note was sold at an extra discount, and indorsed by the assignor ; and the maker was in doubtful circumstances. Nothing more than the smallest degree of extra discount is pretended ; and, I think, that some degree of extra discount is perfectly proper, under such circumstances ; and indeed, under any circumstances, I see no impropriety in allowing some small discount in the sale of a note, as a compensation for making a demand, and giving notice in case of non-payment. The amount will depend on the circumstances and situation of the parties ; the distance, and trouble of making the demand and giving notice ; together with the risk of losing the money, by the possible failure of making the demand, and giving the notice, at the precise time, required by law.

BALDWIN, J. In this case, the plaintiff sues as indorsee of *Pettes.* His title is founded on the contract of assignment : if that is void, his title fails, and he cannot recover.

I have no doubt, that a note of hand may be fairly sold in market, *without warranty,* at a greater discount than the legal interest. The circumstances of the maker of the note may be such, that the fair value in market may be less than the face ; and if sold and taken at the hazard of the purchaser, the transaction will be deemed fair and legal : but if the maker is unquestionably responsible, it is a proper subject for the consideration of the jury, whether a sale for less than the face, even without warranty, is not a cover for an usurious loan. Such sales are not *prima facie* usurious ; they may, or may not be so, according to the circumstances. In like manner, foreign bills of exchange, or even domestic

bills, on a distant place, may be assigned and sold, at a discount, according to the rate of exchange, without the imputation of usury ; and the presumption of law is in favour of the legality of such assignment.

The case under consideration presents a very different question. The plaintiff, a resident in *Hartford*, sues as indorsee of a negotiable note, payable at the *Hartford* bank. The assignor has made himself responsible for the amount of the note, though sold at a greater discount than the legal rate of interest. He has, in fact, given a new and independent security, by the act of indorsement, which created an accepted bill of exchange, drawn by him on the maker, for the amount of the note. That such is the effect of the indorsement will not now be disputed.

It is admitted, that such a transfer may be, and probably is, usurious ; but it is contended, that it is not correct to charge the jury, in general terms, that it is so ; and such is the charge under consideration. I am aware, that there may be circumstances, which will save such transfer from the imputation of usury ; and the same circumstances may save a note, given directly by the borrower to the lender, apparently usurious. Yet I understand it to be conceded, that it would be correct to charge the jury, that if a person give a note, expressing, on the face of it, a greater rate of interest than the law allows, or for a greater amount, than the sum borrowed and the interest, in such case, the contract is usurious, and the security void, although, by possibility, the transaction may be explained, by shewing mistake, or otherwise. It is clearly *prima facie* usurious ; and if nothing else appears in the case, it is absolutely so. The kind of security, whether by note, or bill of exchange, can make no difference in the principle.

The charge, in the case under consideration, was made with reference to the case on trial, and which is stated to us. There is no claim or pretence of facts existing, other than the doubtful circumstances of the maker of the note, to save the transaction from the operation of the general rule. If there were, they ought to have been presented by the party claiming the benefit of them, and must then have been left to the consideration of the jury, and their legal effect explained. It must embarrass a jury to load a charge with exceptions, which the case does not admit. The charge

*New-Haven*,
June, 1817.

Lloyd
*v*
Keach.

ought to be made with reference to the case on trial, and the law correctly stated as applicable to that. The whole case, it is presumed, is before us ; and no fact appears, from which it was possible for the jury to save the transaction from the operation of the general rule of law, as stated, provided they found such facts as claimed for the application of the rule ; and these were submitted to their consideration. I am, therefore, of opinion, that the law, as stated in the charge, was, as a general principle, correct ; and having reference to the case before the court, it was not necessary to state exceptions, which the facts did not warrant the jury to consider. In this view of the case, I am satisfied the charge was correct, and the verdict right ; and that we ought not to grant a new trial.

GODDARD, J. I have experienced some difficulty in making up my opinion in this case, owing partly to the manner in which the case is presented to us, and partly to the intrinsic difficulties of the subject, arising from the different opinions, which, at different times, heretofore, as well as on the present occasion, eminent judges have held respecting it.

I would premise, that there is no doubt but usury may be taken and reserved, under colour of selling notes at discount ; and the facility with which the statute may be, and probably is, often avoided, in this mode, may have carried judges too far in an honest solicitude to close such a door to evasion.

I have no doubt on another point made in this case—that this defendant may avail himself of the usury, if any, in the transaction between the seller and purchaser of the note, although he was not a party to it, and honestly owes the whole amount of the note to somebody. The plaintiff sues as indorsee of the note. If the indorsement was upon a usurious contract, it was void. The plaintiff's title is defective ; he is not indorsee, as he claims by his declaration to be. This is too well settled, and too obvious, to deserve comment.

But was this transaction usurious? Or rather, was the direction of the court to the jury regarding it, correct? On the best examination I have been able to make, I think it was not.

The court tell the jury, " If a man borrow money, and give a note for a greater amount than the sum borrowed and interest, it is usury ; and if he *sell* the note of another person to himself, in the same manner, and indorse it over to the lender, this is equally usury." This latter proposition is too broad and unqualified. The sale of a note at a greater discount than at the rate of six *per cent. per annum*, may, under certain circumstances, be lawfully made. Suppose *A.* has a note, executed by a man at *Baltimore*, and wishing to realize the money here, sells it to *B.* at a discount of two *per cent.* over the legal interest, that being the customary rate of exchange, between the place where the note is sold, and *Baltimore*. This, surely, would not be usurious. There is no more illegality in this, than in drawing a bill of exchange upon *Baltimore*, and selling it at the fair market price. If in the sale of a bill of exchange or promissory note, more than the amount of legal interest should be taken, it might be referable to the rate of exchange, to extra charges, or expenses of collection, provided it is fairly done, without any intention to adopt this, as a cover for usury.

There are, indeed, cases, which seem to countenance a very rigid construction of contracts of this sort. Such was the case of *Benson* v. *Parry*, referred to by *Buller*, J. in giving his opinion in the case of *Auriol* v. *Thomas*, 2 *Term Rep.* 52. and which probably gave rise to that case, in which it was claimed, that taking customary damages and charges upon a bill returned from *Madras* protested, was usurious. Such, also, I should consider the case of *Matthews* q. t. v. *Griffiths, Peake's Ca.* 201. notwithstanding the strong opinion there expressed by Lord *Kenyon*, and his confirmation of it, in his remarks, in the case of *Maddock* v. *Hammett & al.* 7 *Term Rep.* 185. I should be inclined to consider the interest for six days, taken in that case, on the discount of the bill, as properly referable to the subject of remittance, as the extra interest taken in the case of *Hammett* v. *Yea*, 1 *Bos. & Pull.* 144. was afterwards, by Ch. J. *Eyre*, held to be. There, the country bankers were considered, as having a right to take something, as a premium for the credit which their house had established in *London*, by which they were enabled to make remittance with facility. Indeed, the principles laid down, in that case, which was very fully considered,

*New-Haven,*
June, 1817.

Lloyd
*v.*
Keach.

are those to which I yield my entire assent.   Ch. J. *Eyre,* in that case, which arose upon the discount of a large amount of notes, at a greater rate of interest than that allowed by law, says, " It is a mere question of *fact,* for the consideration of the jury, and must always be collected from the whole transaction, as it passes between the parties : and I am of opinion, that it can never be determined, that *any particular fact* constitutes, or amounts to, usury, until all the circumstances with which it was attended, have been taken into consideration."

These principles have been often adopted, and applied, in many other cases, in the books ; and I am the more ready to adopt and apply them here, because I find them sanctioned by the case of *Kent* v. *Phelps,* 2  *Day* 483. and, indeed, carried further than I find it necessary now to go.

Questions of this sort, where indirect usury is claimed, are, as has been said  respecting notice of the dishonour of bills of exchange, generally, mixed questions of law and fact.

To make an application of these principles, to this case, the court tell the jury, " If you shall find that *Pettes* transferred this note to the plaintiff, at a discount greater than lawful interest, and indorsed it in such manner, as to become responsible, thereby, to the plaintiff, for the full amount and contents of the note, the transfer is usurious,—the transaction is a cover for usury, and your verdict must be for the defendant ; otherwise, for the plaintiff.

None of the circumstances attending the transaction are stated to the jury in the charge ; or to us, in the case reserved ; not even the rate of interest, or amount of discount, taken.   The case is placed on the single fact, of the note being sold at a discount greater than lawful interest, and its endorsement by *Pettes,* so as to render him ultimately responsible for its amount.   The attention of the jury is directed to this alone ; and the *court* declare, if that fact is found, " the transaction is a cover for usury."   But whether it was a cover for usury, or not, was for the jury to declare, after a fair examination of *all* the facts connected with this sale and transfer.   They might be, and probably were, such, as to justify such a result.   But the jury should have been allowed to make it.

I know it has been said, that this opinion of the court must be taken with reference to the subject matter ; and that

*New-Haven,*
*June, 1817.*

Lloyd
*v.*
Keach.

no facts are claimed by the plaintiff's counsel, to which this excess of interest could be referable ; and this has caused my mind to hesitate. But other facts than those before us, must have existed ; and the plaintiff by his counsel did claim, that the court should charge the jury, " that if they should find the negotiation of the note in question, by *Pettes* to *Lloyd,* was *bona fide,* and not a cover for usury, they must find for the plaintiff." And believing that the court ought so to have charged the jury, explaining to them, at the same time, the principles of law, applicable to cases of this sort, and left it to *them* to say, whether " the transaction was a cover for usury," I am of opinion, that a new trial ought to be granted.

HOSMER, J. The note in question was given for a fair consideration to *Pettes,* who indorsed and delivered it, on a discount exceeding the lawful interest, to the plaintiff. The parties to the note resided within a few miles of each other. This is the whole case.

The court charged the jury, that the question was, whether the transfer by *Pettes* was a *bona fide* sale to the plaintiff ? They instructed them, that if a man borrow money, and give a note for more than six *per cent.,* it is usurious ; and that if a note is sold for a sum less than its nominal amount, and the holder and seller should indorse it by way of guaranty, to the lender or purchaser, this would be usury. By way of applying the above principles, they, in the final result, directed the jury, that if *Pettes* indorsed the note so as to become responsible for the amount of it, their verdict must be for the defendant.

The charge rests on this basis, that a note given by a person for money borrowed, comprising, as a compensation for the loan, more than the legal allowance, is usurious ; and that a note indorsed in the common form, falls within the same rule. It is difficult, and, in my judgment, impossible, to resist the conclusive force of this proposition. It cannot be controverted, that a note intentionally given for a sum of money, with interest at more than six *per cent.,* is usurious *per se.* No person will suppose, that there is any difference between such a promissory note and a bill of exchange on which there has been a similar reservation. They are equally illegal, and equally opposed to the statute of usury.

Now, a promissory note, when indorsed, is, to every legal intent, a bill of exchange. "While it continues in its original shape, it has no similitude to a bill of exchange. When it is indorsed, the resemblance begins : for then, it is an order by the indorser upon the maker, to pay to the indorsee. The indorser is the drawer; the maker is the acceptor; and the indorsee, the person to whom it is made payable." *Heylyn et al.* v. *Adamson,* 2 *Burr.* 676. Apply it to the principal case. *Pettes* draws a bill of exchange on *Keach,* in favour of the plaintiff, which bill was accepted by *Keach,* and the consideration of it was a discount from the nominal sum of 12 *per cent.* Who doubts the usury contained in this transaction ?

The principle established in *Heylyn* and *Adamson,* has been repeatedly and uniformly recognized. An indorsee may declare against his immediate indorser, as on a bill of exchange made by him, and payable to the plaintiff; the act of indorsing being similar in its operation to that of making a bill. The reason is assigned by *Holroyd,* in the 4th of *Term Reports ;* that, " independently of the statute of *Anne,* the indorsement of a promissory note, of itself, constitutes a bill of exchange, as falling within the same definition, namely, a request by one to another to pay a third person." *Brown* v. *Harraden,* 4 *Term Rep.* 149. See *Chitty on Bills,* 99. *Lond. edit.* No particular form of words is necessary to constitute a bill of exchange ; " a request to deliver money to another is sufficient." *Morris* v. *Lee,* 2 *Ld. Raym.* 1397. The indorser of a bill may charge himself with terms different from the tenor of the bill ; for he is a new drawer. *Gould's Esp.* vol. 1. pt. 1. 88, 95. *Bomley* v. *Frazier,* 1 *Stra.* 441. *Lake* v. *Hayes,* 1 *Atk.* 281. *Heylyn* v. *Adamson,* 2 *Burr.* 669. *Lambert* v. *Pack,* 1 *Salk.* 127.

I do not entertain a doubt, that a bill or note may be sold at a discount, without incurring the charge of usury. Of a *bona fide* sale, they are as susceptible as personal property in possession is. *Musgrove, q. t.* v. *Gibbs,* 1 *Dall.* 216. *Wycoff* v. *Longhead,* 2 *Dall.* 92. A sale is the transmutation of property, with, or without, a warranty of title. But, the indorsement of a promissory note, or bill of exchange, is a transfer, accompanied with a contract collateral to the sale, and is more than the mere transmutation of property with

warranty of title. On this principle, a direct opinion has been given by *Parsons*, Ch. J. " A note," says he, " may be sold at a greater discount than the legal interest, without being usurious. This generally happens when the holder doubts the solidity of the parties holden to pay ; and therefore, sells it, without his own guaranty, at a greater than the legal discount, on account of the hazard. In the case before the court, the plaintiff took the guaranty of all persons, who ever had any interest in the note, and even of the broker. If a sale under these circumstances, is not to be considered as usurious, it is not easy to conceive what sale is within the statute." *Churchill* v. *Suter*, 4 *Mass. Rep.* 162.

The statute of usury, if a note like the one under discussion, may legally be indorsed, on the pretext of a sale, is a dead letter. A decision sanctioning such a transaction, effectually repeals the law.

I do not find it to have been pointedly decided, that a note indorsed and negotiated at an extra discount, necessarily contravenes the statute of usury. I presume it is because the truth of the position has never been doubted. It has been taken for granted in numerous instances. *Pratt* v. *Willey*, 1 *Esp.* 40. *Daniel* v. *Cartony*, 1 *Esp.* 274. *Brard* v. *Ackerman*, 5 *Esp.* 119.

It was supposed in the argument of this case, that a determination against the plaintiff would be unfriendly to the sale of foreign bills of exchange. I am not of that opinion. Among merchants there is a common usage to sell indorsed bills of this description. If the transfer is according to the usual rate of exchange, and not a cover for usury, it is free from exception. The case is peculiar. " The price of exchange arises from this circumstance, that in commercial places, a bill drawn upon a particular place is sometimes more valuable than money ; and on the contrary, money is sometimes more valuable than such a bill. This difference depends upon the abundance or scarcity of the money which is to be drawn for or remitted." *Evans on Bills of Exchange*, 40.

A contract could never be considered as corrupt, where the indorser obtained no more for his bill than the marketable cash value, or the worth of it to the indorsee, by the well known standard of exchange. But the domestic transaction

under discussion between parties bounded by the circumference of half a dozen miles, renders a further discussion of this subject wholly inapposite.

The court, in the charge given to the jury, obviously confined themselves strictly to the case before them. They expressed their opinion and direction upon the operation of *law on the facts appearing. It would have been both improper* and unnecessary for them to have gone beyond the case. The direction to the jury, in my judgment, was adapted to the facts, and is precisely correct.

If the principles I have assumed, and their application to the case, are admitted, the only conceivable objection to the court's charge, must arise from the direction given to the jury. It has been contended, that they should have been instructed to view the enquiry, whether the statute was contravened, as *mere fact.* I cannot assent to this position. The facts having been proved or admitted, whether the case is within the statute, is merely a question of *law.* It is perfectly analogous with the case put by the court in their charge. If a man borrow money, and give a note for more than six *per cent.*, it is usurious. The usury in the proposition advanced, results necessarily. There is nothing to leave to the jury. Between this and the principal case I can discern no material difference.

To the objection made, that no person may take advantage of usury in the indorsement of a note, but the person oppressed with the unlawful exaction, I reply, that the assertion is utterly unfounded. The plaintiff can recover only on *the exhibition* of a legal title, and the defendant may avail himself of the want of it. *Strong v. Tomkins,* 8 *Johns. Rep.* 98. The contract, if usurious, is void; and the title being directly in issue, the defendant may protect himself by shewing its invalidity. The point has often been settled, and is at rest. *Pratt v. Willey,* 1 *Esp.* 40. *Rich et al. v. Topping,* 1 *Esp.* 176. *Daniel v. Cartony,* 1 *Esp.* 274. *Coombe v. Miles,* 2 *Campb.* 553. In the cases cited, and many more that might be mentioned, to the usury complained of, the defendant was no party.

GOULD, J. The first question is, whether, in any case, and if so, under what circumstances, the transfer of a note, upon a discount of more than six *per cent.*, by an absolute

indorsement, is usurious ? I have no doubt, that it is so, of course, unless there exists some particular ground of exception (as a contingency, exposing the principal to hazard, or a course of exchange, where the note is payable abroad, or some other special reason,) to take the case out of the general rule. And in the present instance, no such circumstance exists. It is urged, however, that a note, like any other property, may be legally sold, at an indefinite deduction from its nominal amount, or real value : and this no one denies. But the distinction, applicable to the present case, is between the real *sale* of a note, and the *giving of security* for money, advanced by way of *loan.* And it will be agreed, I trust, that what is a sale, and what a loan, the facts being given, is a question of law.

In the present case, the distinction, which, in my judgment, justifies the direction to the jury, is this : If the holder of a note transfers it, upon a discount, *without indorsing* it ; the transaction is, *prima facie,* a *sale ;* though, like any other transaction, which is, in form, a sale, it may be only a cover for usury : but if he makes the transfer, by his own absolute indorsement, the indorsement and transfer are, in substance, a mere security for money borrowed. In the former case, (supposing, as I do, no artifice to evade the statute,) the assignor enters into no engagement to repay, in any event, the money, which he receives ; and of course, makes no contract, of which usury can be predicated. In the latter, he binds himself, absolutely, that the whole sum received, together with the discount, (these being always the amount of the note,) shall be repaid to the indorsee. And I can perceive no difference, in principle, upon the point of usury, whether this obligation is created by an indorsement, or by an original note, or bond. The indorsement is, in effect, the same thing, as the drawing of a bill of exchange upon the maker, in favour of the indorsee : and if one person, for a given sum, received of another, draws an inland bill in favour of the latter, for more than the amount received, and the lawful interest ; can there be any doubt, that the transaction is usurious ? To present the case in another form, the indorsement may be regarded, as substantially a *new note,* made by the defendant to the plaintiff, but accompanied with a pledge of the original one, and payable, of course, by the defendant, on condition, that the latter is not paid. But it

will not be claimed, that the *condition*, here supposed, can vary the case, in respect to the question of usury. And if an obligation for $100, with the lawful interest of that sum, is given for $90 advanced; what difference can it make, upon the point of usury, whether the contract is in the form of a note, of a bond, or of an indorsement? Or, whether there is, or is not, upon the opposite side of the same paper, or upon a separate one, another obligation, which doubles the security, and upon which payment is, in the first instance, to be sought? I am unable to discover any.

But the question does not depend, altogether, upon general reasoning: for it has been tacitly admitted, and virtually decided, in several cases, that such an indorsement is usurious; and the rule is not denied in any case, that has been cited. It was taken for granted, by the court and the counsel, on both sides, as a point settled, in *Rich* v. *Topping*, 1 *Esp. Ca.* 176. S. C. *Peak. Ca.* 224.; and the direction of Lord *Kenyon* to the jury, in that case, proceeds entirely upon the *assumption*, that a transfer, like the one now in question, is usurious. Precisely in the same manner was the same principle implicitly admitted, on all hands, in the cases of *Brard* v. *Ackerman*, 5 *Esp. Ca.* 119. *Jones* v. *Brooke*, 4 *Taun.* 464. S. C. cited *Phill. Ev.* 55. *Parr* v. *Eliason*, 1 *East*, 92. and *Churchill* v. *Suter*, 4 *Mass. Rep.* 162. Indeed, in all these cases, except the last, the facts in controversy were wholly irrelevant, as were the points discussed and decided, except upon the admission, that a transfer, like that now in question, is usurious. And in *Churchill* v. *Suter*, *Parsons*, Ch. J. speaking of a transfer by indorsement, precisely like the present, observes, that if it is not usurious, " it is difficult to conceive what is so." The decisions, which have been had, in cases, in which an *intermediate* transfer has been claimed to be usurious, the plaintiff being confessedly a *bona fide* holder, (as in 1 *Esp. Ca.* 273. and 1 *East*. 92.,) are plainly foreign to the question. The principle of distinction between those cases and the present, is too obvious and familiar to require any explanation. Even in those cases, however, the rule, for which the defendant contends, is tacitly recognized.

The usage, which prevails in the sale of *foreign* bills, I lay out of the case. The greater or less value, to a person in one country, of money in another, has established, with respect to them, a course of exchange, which may place them

New-Haven, June, 1817.

Lloyd v. Keach.

*New-Haven,*
June, 1817.

Lloyd
*v.*
Keach.

upon a distinct footing : as the actual value of the money, for which they are drawn, may, at the place of payment, be much less, or much greater, than their nominal amount, at the place of negotiation. But such considerations cannot apply to common notes of hand, or bills, payable in the neighbourhood, in which they are drawn.

The fact, that the note was not made for the *purpose* of raising money at a discount, might, under supposable circumstances, be material upon a question respecting the original validity of the note itself; but cannot affect this case. Here, the question is, whether the indorsement, only, is not illegal ; and for the reasons, already given, I am fully satisfied, that it is.

But it is further urged, that if there was any illegality in the transfer, the defendant being no party to it, cannot take advantage of it. But any party to a note or bill, when sued upon it, may surely object, that the plaintiff has no title to it ; and if the transfer in this case was illegal, it was strictly void, and of course, conveyed none. It is one of the characteristics of a *void* contract, as contradistinguished from a *voidable* one, that third persons, whose interest becomes involved in, or connected with, it, may take advantage of its invalidity. It is also worthy of remark, that in the cases of *Rich* v. *Topping, Brard* v. *Ackerman, Churchill* v. *Suter,* and *Jones* v. *Brooke,* this objection, if well founded, would have arrested the defence, *in limine ;* and have rendered the evidence offered for the defendants, together with the arguments at the bar, and the opinions of the court, entirely idle and impertinent. And yet, not a doubt was expressed, either by the counsel or the court, of the sufficiency of the defence, if proved. There could not, indeed, be a stronger impeachment of each of those cases, than is implied in this objection. But the point was directly settled, by the supreme court of *New-York,* in *Strong* v. *Tomkins,* 8 *Johns. Rep.* 98., where the precise objection was made, and expressly over-ruled : and I may add, that the same principle was taken for granted, by the court and counsel on both sides, in the case of *Baldwin* v. *Norton,* argued and determined in this court, during the present term.

It is finally contended, that, at any rate, it should have been left to the jury, to infer from the whole case, as a matter of fact, whether the transaction was a *bona fide* sale and purchase,

or a cloak for usury. This depends upon the question, whether the view, which I have taken, of the first point in the case, is, or is not, correct. If it is so, the objection appears to me equivalent to saying, that what constitutes usury in law, is matter of fact, to be decided by the jury. If, upon a direct loan, *eo nomine*, of a given sum, the borrower should give his obligation for the repayment of it, with twelve *per cent.* interest, (nothing more appearing in the case;) would it be left to the jury to enquire, whether the transaction was a *bona fide* sale of the borrower's note, or an artifice to elude the statute? Where a transaction, which is, in form, a *sale*, is claimed to have been a contrivance to evade the statute, such a direction may be proper and necessary: but in a case, like the present, it would be, in my judgment, a mere evasion of the judge's duty. For, whether the transfer of a note, by indorsement, at a discount exceeding the rate of lawful interest, is, *prima facie*, usurious, or not, is manifestly as sheer a question of law, as can be stated, and therefore, one, which it was not only the right, but the duty of the court to decide. It will be agreed, I trust, that a premium of more than six *per cent.*, for money advanced, is, *prima facie*, usurious: and this, being a presumption of law, becomes, of course, conclusive, unless there is something in the case, to rebut it. If, then, as I have endeavoured to show, the transfer of a note by indorsement, at a discount of more than six *per cent.*, is, *prima facie*, usurious; I cannot conceive of a direction less exceptionable, than that in question.

But the direction, it is said, ought to have been qualified; because the rule, laid down to the jury, implies, that there is no *possible* case, in which the indorsement of a note, upon a discount exceeding six *per cent.*, can be lawful. To this, I answer, first, that if the rule, as laid down by the judge, is to be taken, in this unlimited sense, the jury have, indeed, been falsely instructed by it, in relation to a principle in the law of usury; but could not possibly have been misled by it, as to their finding: for it cannot be pretended, that the plaintiff has brought his case within any of the exceptions to the rule. He has, of course, no right to complain of it. But the more proper answer, is, that the direction is to be taken, as in every other case, *secundum subjectam materiam*. To have qualified the proposition, to which the

*New Haven,*
*June, 1817.*

Lloyd
*v.*
Keach.

plaintiff's counsel objects, by all, or any of the possible exceptions, which might apply to other supposable cases, would have been not only unnecessary, but wholly irrelative and improper. For no other ground of exception to the general rule was claimed to exist, than that the maker was deemed to be in doubtful circumstances ; but this fact most clearly conduced, rather to strengthen, than to destroy, the defence —as it tended to show, that the plaintiff's chief reliance must have been upon the indorsement. To the omission of this circumstance, then, he cannot, surely, object ; and if the objection can prevail, on any ground, directions to the jury will be subjected to a severer test, than even special pleadings. Suppose an obligation given, acknowledging the receipt of a particular sum of money borrowed, and containing an engagement to repay it, with twelve *per cent.* interest. The obligation would be, upon the face of it, only *prima facie* usurious : for there *may* have existed a reason, which, in law, would justify such a premium. If, however, in an action upon the instrument, now supposed, (no such reason being shown to exist,) the judge should instruct the jury, that a security for money lent, including more than six *per cent.* interest, is illegal and void—without explaining the exceptions, to which the rule is subject, upon a possible, but different, state of facts ; could it be successfully objected, that the direction was wrong, because he did not inform them, that, in certain *other* classes of cases, governed by *different* principles, such a reservation might be legal ? This will certainly not be pretended. But such an objection, in the case supposed, would, for aught that I can comprehend, be precisely as well founded, as that now in question. I am, therefore, of opinion, that a new trial ought not to be granted.

New trial to be granted.