## SALTMARSH v. TUTHILL.

1. A notice of the dishonor and protest of a bill of exchange, which describes it correctly, but is silent as to the date and time of payment, is *prima facie* sufficient. The interpretation of such a paper is the province of the court, and should not be referred to the jury.

2. A *bona fide* holder of a bill of exchange for value, which he has received before its maturity, and without notice of any defect or infirmity in the title of the party from whom he received it, may recover upon it, though the person from whom he received it acquired it by fraud.

3. H drew a bill of exchange in favor of C, on B & Co., which was indorsed by C, and one S, *on Sunday*, and handed by H, to B & Co., by whom it was transferred to T, in substitution, and extension of a bill for the same amount, on which T had previously advanced money, at a usurious rate of interest, T not having notice that the bill was indorsed on Sunday. Held, that T did not receive the bill, *bona fide*, in the usual course of trade, so as to exempt the paper in his hands from a defence which would have been available against it, as between the original parties; and that the indorsement on Sunday, being in violation of a public statute, was void.

Error to the Circuit Court of Dallas. Before the Hon. E. Pickens.

AssUMPSIT by the defendant in error, against the plaintiff

in error, as indorser of a bill of exchange for $4,000, drawn by Samuel M. Hill, on Bower & Co., in favor of A. W. Coleman, dated 13th December, 1845, and payable thirty days after date ; accepted by Bower & Co., and indorsed by Coleman, and Saltmarsh.

The defendant pleaded—1. *Non-assumpsit.* 2. That the bill was an accommodation bill, and appropriated to a different purpose than was intended by the drawer, first and second indorsers.

3. That the bill was an accommodation bill, and was, after it came to the hands of the acceptor, fraudulently put in circulation by him.

4. That the bill was placed in the hands of the plaintiff, by Wm. Bower & Co., as collateral security, to a debt due by Bower & Co. to the plaintiff.

5. That the bill was taken by plaintiff, from Bower, in satisfaction of a pre-existing debt, due from Bower & Co. to the plaintiff.

6. That the plaintiff discharged the drawer of the bill from the payment of the same, before the institution of this suit.

7. That he did not indorse the bill. This plea is verified by affidavit.

8. Usury; and 9. That the indorsement aforesaid was made on Sunday.

The plaintiff took issue on the first, fourth, sixth, seventh and eighth pleas, and demurred to the second, third, fifth, and ninth, which demurrer was sustained by the court.

A subpœna, *duces tecum*, having issued to one Haig, the defendant produced his deposition. Haig, who was a partner in the house of W. Bower & Co., stated, that the original bill, of which the one sued on was a renewal, was for the same amount, and made by the same parties, due the 13th December, 1845. That this original bill, was, with another, indorsed by Perine & Crocheron, due 20-23 December, 1845, for $5,000, passed to the plaintiff; and the transaction in its original form, appears upon the books of W. Bower *&* Co. as follows : Cash book—20 August, 1845. J. W. Tuthill, to an amount borrowed of J. W. Tuthill, on two bills, as follows : one drawn by S. M. Hill, indorsed A. W.

Coleman, and A. Saltmarsh, dated 10th May, at 7 months, due 10-13 December, 1845, $4,000. One drawn by same, and indorsed, A. W. Coleman, and Perine & Crocheron, dated 20th May, at 7 months, due 20-23 December, 1845, $5,000. Money got 29th May, $8,000. The said amount of $8,000, remained to the credit of J. W. Tuthill's account, until the failure of W. Bower & Co. in February, 1846, when said account was balanced by a transfer of said amount, to the credit of W. Bower & Co. suspended debt account. J. W. Tuthill's loan account, was never charged with the two before described bills. The original bill of $4,000, did not appear on record in the bill book of W. Bower & Co. The object in closing J. W. Tuthill's loan account, on the books of W. Bower & Co. was for the purpose of condensing all the debts, due by, and to the firm. The court required the plaintiff to admit that this witness would prove these facts, or that the cause be continued. The plaintiff objected to so much, as purported to be a copy from the books of W. Bower & Co. as not competent. The court overruled the objection, and he excepted, and the testimony was read to the jury.

It was also in evidence, that the agent of the plaintiff in said transaction, and Bower, had been intimate, and confidential friends, and that they had assisted Bower with large loans of money, and that the said agent, at the time of obtaining the bill sued on, was fully in his confidence. There was also testimony tending to prove, the bill sued on was taken by plaintiff, from Bower & Co. in payment of a pre-existing debt, due from them to him, and that when so taken, the plaintiff had notice that there was no consideration for the paper passing from defendant, and any other party to it, and that it was an accommodation bill, made for the accommodation of the acceptors, and to be used only in renewal of a debt, due from Bower & Co. to the Life Insurance and Trust Company.

It was further proved, that the plaintiff was a cotton buyer in Mobile, and it was proved by Bower that he was to allow the plaintiff eight per cent. on the loan of $8,000, and two and a half per cent. for advancing.

It was further proved, that the notice of protest in this case, was sent to Hill, the drawer, at Cahawba, whilst the

nearest post office to his residence, and the one at which he received his letters before and since, was "Pleasant Hill."

The defendant also gave in evidence, the notice of protest, which he had received, as follows: "Mobile, Ala., Jan. 15, 1846. Please to take notice, that a bill of exchange drawn by Samuel M. Hill, on William Bower & Co. for the sum of four thousand dollars, in favor of A. W. Coleman, and indorsed by you, was this day protested by me for non-payment; the holder of which holds you responsible.

I am your obedient servant,

JOHN ROLSTON, Notary Public."

It was also proved, that the defendant indorsed the bill on Sunday. The said William Bower testified, that the several parties to the bill, had been in the habit of accommodating. him with their signatures for several years, and that when they signed the bill in this case, they knew it was to go to plaintiff, in the renewal of the original bill; but this was contradicted by Hill, the drawer, and Coleman, the indorser, who swore it was made in blank, and for a different purpose. The plaintiff was not informed that the bill was indorsed on Sunday.

The defendant moved the court to charge—1. That if the bill sued on, was not received by the plaintiff in the usual course of trade, it was subject to all the defences existing between the original parties. The court gave the charge with this qualification, that if the defendant knew when he signed it, that it was to go in renewal of a previous bill, such would not be the case.

2. That if the bill sued on was received as a collateral security, it was not received in the usual course of trade; which the court gave with the same qualification.

3. That if the said bill was received in renewal, or payment of a pre-existing debt, with notice, there was no consideration passing between the original parties, it was not received in the usual course of trade; which charge the court gave, with the same qualification.

4. That if the jury believed, the plaintiff was an usurious holder, or the usurious indorsee of the defendant, he did not receive the bill in the usual course of trade; which the court refused.

50

5. That if Hill, being an accommodation drawer, was discharged by want of notice, the plaintiff cannot recover; which charge the court refused to give.

6. That the jury were the judges of the facts, which were to determine that issue, for or against the plaintiff; which the court refused to give.

7. That if the notice of protest to the defendant, was calculated to mislead him, the plaintiff cannot recover; and the jury were to judge, whether he was liable to be misled; which the court refused, and charged that the notice was in form and language sufficient.

8. That if they believed, the defendant was misled by the notice, so as to lose his remedy against Hill, the drawer, the plaintiff cannot recover; which the court refused.

9. That if the defendant indorsed the bill on Sunday, the plaintiff could not recover; which charge the court refused to give, and charged that he could recover, unless he knew that it was so indorsed.

10· That if the bill was not received in the usual course of trade, and was indorsed on Sunday, the plaintiff was not entitled to notice that it was so indorsed; which charge the court refused to give.

11. That if the plaintiff was an usurious holder of the bill sued on, he was not entitled to notice that it was indorsed on Sunday; which the court refused, and the defendant excepted to each refusal to charge, and to the charges given.

The assignments of error present the matters of law arising out of the bill of exceptions, and the sustaining the demurrers to the several pleas of the defendant.

G. W. GAYLE, with whom was P. HAMILTON, for plaintiff in error.

1. The court below erred in sustaining the demurrer to the second plea, which was, "that said bill was an accommodation bill, and appropriated by the acceptors to a different purpose than was intended by the drawer and first and second indorser." See Chitty on Bills, top page, 81, 335, n., 9th Am. ed.; Wardell, et al. v. Howell, 9 Wend. 170.

2. The court below erred in sustaining the demurrer to the third plea, which was, "that said bill was not an accom-

modation bill, and was, after it came to the hands of the said acceptors, fraudulently put in circulation by them." See Hill v. Gayle & Bower, 1 Ala. 275; 2 Eng. C. L. 366, 433; Zeigler v. Gray, 12 S. & R. 42; 9 S. & R. 385.

3. The court below erred in sustaining the demurrer to the fifth plea, " that said bill was taken by said plaintiff from said Wm. Bower & Co. in satisfaction of a debt due from said Wm. Bower & Co. to said plaintiff." See Ontario Bank v. Worthington, 12 Wend. 593; Coddington v. Bay, 20 J. R. 637; Rosa v. Brotherson, 10 Wend. 85; see also Stalker v. McDonald, 6 Hill's N. Y. Rep. 93, reviewing the English and American authorities, and disapproving the case in 16 Peters, p. 1. These decisions have been sanctioned by our supreme court, with the qualification that the holder must have notice of the equities between the original parties, adopting 16 Peters, 1. See Bank of Mobile v. Hall, 6 Ala. 639.

4. The court erred in sustaining the demurrer to the 9th plea, " that the defendant's contract of indorsement aforesaid was made on Sunday." The declaration and plea suppose the plaintiff and defendant present making the contract of indorsement, and that the plaintiff knew when it was made, being present. See Pierce v. Hill, 9 Porter, 151; O'Donnell v. Swinney, 5 Ala. 467; Dodson v. Harris, 10 Ala. 566; Shippey v. Eastwood, 9 Ala. 198.

5. The court below erred in qualifying the first charge asked by plaintiff in error. This qualification had a tendency to, and did, lead the jury from the consideration of facts sufficient to warrant a verdict for the defendant, viz., from the facts—1. That there was no consideration for the bill, and the holder an usurious one, and not entitled to notice, of equities between the original parties. 2. Because the books of the acceptor show the bill to have been taken by the holder as a collateral. 3. That it was intended for one purpose, and misapplied—proved by two witnesses and holder, charged with constructive notice.

6. The court below erred in refusing to give the fourth, fifth and sixth charges asked. See Chitty on Bills, top p. 81, 9th Am. ed.; Id. 335, note; Wardell, et al. v. Howell, 9 Wend. 170. See as to usury, Fariss, et al. v. King, 1 Stew,

255; Wright v. Elliot, Id. 391; Ely v. McClung, 4 Por. 128. As to *bona fide* holder, Ramsey v. Morgan, 16 Wend. 574.

7. But the discharge of an accommodation drawer (entitled to notice) by sending notice to a wrong post office, discharges one subsequently liable on the paper, upon two principles. 1. It amounts to a payment; and 2. It cuts off the indorsee from one of his means of indemnity, as he, in his recourse upon the drawer, can have the benefit of the notice given by the holder. See Bickerdike, et al. v. Bollman, 1 T. R. 406, 409; Smith v. Knox, 3 Esp. R. top p. 46; English v. Darley, Id. 48; Haling v. Blackhall, 2 Black. R. 1235; Lambert v. Oaks, 1 Salk. 127, in point; Lambert v. Oaks, 12 Mod. 244, in point; Sargeant v. Appleton, 6 Mass. 85, in point; Chitty on Bills, 465-6, t. p.; Norman v. Bank of Ala. 3 Por. 355; Kennon v. McRae, 7 Id. 175; Roscow v. Hardy, 12 East, 433, in point; Butler v. Denham, 2 McCord, 350, in point; Galpin v. Hard, 3 Id. 394, in point; Bank v. Ayers, 16 Pick. 392; Chitty on Bills, 9th Am. ed. 466, in point. Accommodation drawer entitled to notice. Sherrod v. Rhodes, 5 Ala. 683. The indorser entitled to the benefit of notice given by holder. See Sherrod v. Rhodes, 5 Ala. 683; Chitty on Bills, 9th Am. ed. t. p. 523, 525.

8. The court below erred in refusing to give the tenth charge asked by plaintiff in error, "that if the proof showed that the defendant indorsed the bill sued on, on the first day of the week, commonly called Sunday, the plaintiff could not recover." 1. Every indorsement is a new contract. See Kennon v. McRae, 7 Por. 175. 2. Contracts made on Sunday void, and subsequent acknowledgment cannot make it good. See Pierce v. Hill, 9 Por. 151; O'Donnell v. Sweeny, 5 Ala. 467; Dodson v. Harris, 10 Ala. 566; Shippey v. Eastwood, 9 Ala. 198. As to qualification of charge, see Wilson v. Mason, 1 Cranch, 45.

9. The court below erred in refusing to give the eleventh charge asked by the plaintiff in error, "that if the bill was not received in the usual course of trade, and was indorsed by the defendant on Sunday, the plaintiff then was not entitled to notice that it was so indorsed." In reason, if a holder who gets a bill not in the usual course of trade, is not entitled to notice that the bill is void for want of consideration, he is not

entitled to notice that it is void as a contract made on Sunday. See Andrews & Co. v. McCoy, 8 Ala. 920; Coddington v. Bay, 20 T. R. 637; Ontario Bank v. Worthington, 12 Wend. 593; Rosa v. Brotherson, 10 Wend. 85.

J. W. Pryor and T. & J. F. Williams, for the defendant in error.

1. A bill received in payment of a pre-existing debt, is received in the usual course of trade, though the holder knew the bill was an accommodation bill, such holder is a *bona fide* holder for value. Nothing is said about the time plaintiff received the bill. The whole record shows it was conceded on the trial, that plaintiff received it before maturity, &c. That knowlege of plaintiff that it was an accommodation bill will not defeat his recovery. Story on Bills, § 191, 253; Smith v. Knox, 3 Esp. 46, 47; Powell v. Waters, 17 John. 180; Bank Chenango v. Hyde, 4 Cow. 567, 573; Grandin v. Le Roy, 3 Paige, 509, 510-11.

2. As to the count for indorsement on Sunday. Count for indorsement was not void. For construction of the English statute on Sunday, see O'Donnell v. Sweeny, 5 Ala. R. 469; Shippey v. Eastwood, 9 Id. 198; Butler v. Lee, 11 Id. 885. For the construction of the English statute, Blaxsome v. Williams, 3 B. & C. 232; Ib. 10 E. C. L. 60; Fennel v. Ridler, 5 B. & C. 406; Ib. 11 E. C. L. 261; Begbie v. Levy, 1 Tyrwhit, 130-31.

If bill indorsed on Sunday not competent to defendant, who has been guilty of a breach of the law, to set up his own misconduct as an answer to his indorsement in the hands of plaintiff, who is an innocent holder. Blaxome v. Williams, Fennel v. Riddler, Begbie v. Levy, *supra.*

If bill indorsed on Sunday, but not negotiated until a subsequent day, the contract was not completed until the bill was negotiated. Clough v. Davis, 9 N. Hamp. 500; Blaxsome v. Williams, *supra;* Norton v. Powell, 43 E. C. L. 30, 33; Bank of Chenango v. Hyde, 4 Cow. 567, 572. Very clear distinction between the *act* of indorsement and the *contract* which vests bill in the holder. That legislature has prohibited an act, does not make the act void. Br. Bank v.

Crocheron, 5 Ala. 250, 255; Whetstone v. Br. Bank, 9 Ib. 875, 883; Story on Bills, 220 § 189, ed. 1847.

3. There is no evidence in the record tending to prove that the bill was received in the usual course of trade. But what is the usual course of trade, is not for the jury to decide. It is a question of law. But suppose the plaintiff not entitled to notice, what then? This prayer has no legal conclusion.

4. As the acceptors were in possession of the bill before maturity, it will be presumed that it was made for their accommodation. Brown v. Tabor, 5 Wend. 566-7; Stall v., Catskill Bank, 18 Ib. 466, 478.

Payment so as to bind third parties, means payment at maturity, and not payment by anticipation. Story on Bills, § 417; Barbridge v. Manners, 3 Campbell.

*Bona fide* holder of a bill or note is one who has paid value for it before maturity, without having participated in any fraud involved in the circulation, &c. Story on B. § 416, 194; Crook v. Jades, 5 Barnw. & Ad. 909; Ib. 27 E. C. L. 234; Barthoun v. Harrison, 5 B. & A. 1098; Ib. 27 E. C. L. 276; Goodman v. Ellis, 10 Ad. & El. 784; Ib. 37 E. C. L. 235; Musgrove v. Drake, 5 Ad. & El. N. S. 185; Ib. 48 E. C. L. 185.

COLLIER, C. J.—*Prima facie*, the holder of a bill is presumed to have acquired it for a valuable consideration, and is not bound to show that he has paid any thing for it, until the other party has established the want, or failure, or illegality of the consideration, or that the bill had been lost or stolen before it came to the possession of the holder. When this has been done, it may be incumbent upon him to show, that he has given value; for under such circumstances, he ought not to be placed in a better situation than the antecedent parties, through whom he obtained the bill. Story on Bills, § 193. Every person, says the same learned author, is treated as a *bona fide* holder for value, who has advanced money or other property upon it, or who has received it in payment of a precedent debt, or has a lien on it, or has taken it as collateral security for a precedent debt, or for future as well as past advances. Thus, a banker, who is accustomed to make

advances or acceptances from time to time for his customers, and has in his possession negotiable securities belonging to them for collection, is deemed to be a holder for value, to the extent of such advances and acceptances. In every such case, he is deemed to have a lien on such securities for the balances from time to time, as well as for such acceptances, by the implied consent or agreement of his customers, resulting from the usage or course of business. Id. § 192, and note 3.

In the Bank of Mobile, et al. v. Hall, 6 Ala. Rep. 639, it was held that a negotiable note received before its maturity in payment of a pre-existing debt, is negotiated in the usual course of trade, and the previous parties to the paper cannot avail themselves of a defence against the holder, of which he had no notice. But where the transfer is made as an indemnity against future loss on an existing suretyship, the transaction is not in the usual course of trade, so as to preclude the maker from interposing such a defence.

If, however, the holder of a negotiable instrument, at the time he acquired it, knew that circumstances existed which rendered it improper that payment should be enforced, he will not acquire any better interest in the same than the party had, who transferred it to him. A person, therefore, who receives a bill with notice that it is to be negotiated only upon certain terms, or for a particular purpose, holds the bill subject to such terms. Chitty on Bills, 264, 9th Am. ed.

In Wardell v. Howell, 9 Wend. Rep. 170, it was held that receiving the transfer of a note as collateral security for the payment of a *pre-existing debt*, is not taking it in the ordinary course of trade, and for a valuable consideration, as between the *creditor* and an *accommodation* indorser : consequently, a note indorsed for the *accommodation* of the maker, delivered to him to be used in *renewal* of a former note about to fall due at a bank, transferred by the maker as collateral security for the payment of *another debt* owing by him, cannot be enforced against the indorser by the creditor to whom such transfer is made. It was also decided, that, where a note has effected the substantial purpose for which it was designed by the parties, an *accommodation indorser* cannot object that it was not effected in the *precise manner* contem-

plated at the time of its creation ; but where a note has been diverted from its original destination, and fraudulently put in circulation by the maker, or his agent, the holder cannot recover upon it against an accommodation indorser, without he received it in good faith, in the ordinary course of trade, and paid for it a valuable consideration.

When a bill has once been paid by the acceptor, after its maturity, it loses all vitality, and is no longer negotiable; but if paid before it becomes due, and the fact of payment be unknown to a holder, who acquires it in the due course of trade, it will be a valid security in his hands. Story on Bills, § 223 ; Chitty on Bills, 9 Am. ed. 248, 249, and notes ; Bayley on Bills, 5 ed. 165, 166 ; Smith's Mer. Law by H. & G. 222 to 224, and citations in notes; Wallace v. The Br. Bank at Mobile, 1 Ala. Rep. 565.

The principles we have stated are decisive of the questions arising on the second, third, and fifth pleas, and the ruling of the circuit court on the four first prayers for instruction, except so far as the question of usury may be embraced by the qualification which followed the first, second, and third charges ; and they clearly show that there is no error thus far, of which the defendant can complain, unless it be in the exception stated—a point which we will hereafter consider.

The acceptor of a bill is primarily liable for its payment, and the act of indorsing is equivalent to drawing a new bill ; every indorser thereby separately undertakes, as well as the drawer, that the drawee shall honor the bill, and the holder may consequently resort to him, without calling on any of the other parties. It is the business of the indorser, as soon as he has received notice himself, to forward the like notice to the drawer, and all persons to whom he means to resort. In general, it is advisable for the holder to give notice to every party as he can ascertain his residence ; for otherwise he will be without remedy against him, unless some other party to the bill has given him notice, in which case such notice may enure to his use. Whitman and Hubbard v. The Chattahooche Bank, 8 Port. Rep. 258 ; Chitty on Bills, 369, 530, (9th Am. ed.) and notes. Thus we see that it is immaterial in this action against the second indorser, whether the drawer

of the bill had due notice of its dishoner; and consequently there is no error in the refusal of the circuit judge to give the sixth and seventh charges prayed.

We do not perceive any objection to the notice of the dishonor of the bill, which the notary who protested it transmitted to the defendant. The notice states the date of the protest, the amount of the bill, the names of the drawer, acceptors, and indorsers, in consecutive order. The only other requisites to a perfect description of the bill are, its date and time of payment, and these are not indispensable to inform the drawer or indorser what particular paper has been dishonored; the notice furnishes other and satisfactory *criteria* for its identification. It does not appear that the defendant had indorsed more than one bill for the same amount, and between the same parties, maturing about the date of the protest, so that if proof of these facts could impair the effect of the notice, in the absence of such evidence it is quite sufficient. See Moorman v. The State Bank, 3 Port. Rep. 353. The written notice being produced, it was the province of the court to determine its meaning, and to say whether, upon its face, it was sufficient. There is no fact for the decision of the jury arising upon such a paper—its interpretation upon well established principle is referable to the judge. Mills v. The Bank of the U. S. 11 Wheat. Rep. 431; The Bank of the U. S. v. Carneal, 2 Pet. Rep. 552; The Bank of Alexandria v. Swann, 9 Id. 33; Musson v. Lake, 4 How. U. S. Rep. 282, op. of Woodberry, J.; Gilbert v. Dennis, 3 Metc. Rep. 495; Cowles v. Harts, Johnson & Co. 3 Conn. Rep. 516; Ransom v. Mack, 2 Hill's N. Y. Rep. 587; Meirs v. Brown, 11 Excheq. Rep. 372; 2 Kent's Com. 2d.ed. 108; Higgins v. Morrison's Ex'r. 4 Dana's Rep. 105; Chit. on Bills, 9th Am. ed. 501-2; Stockman v. Parr, 11 Mees. & Welsb. Rep. 809; Strange v. Price, 10 Adol. & Ellis' Rep. 125; Hartley v. Case, 4 Barn. & C. Rep. 339; S. C. 1 Bing. New Cases, 194; Bank of Cape Fear v. Seawell, 2 Hawks'. Rep. 560; Story on Bills, § 390. According to the English decisions, no form of words is necessary to be used in giving notice of the dishonor of a bill of exchange, but the language employed must be such as to convey notice to the par-

ty what the bill is, and that payment of it has been refused by the acceptor. Many of these decisions require unnecessary strictness and particularity, but some of the more recent cases manifest a disposition to conform to the common understanding of merchants, and public convenience. The courts have laid hold of any expressions in the notice, which might fairly be presumed to indicate that a due presentment or dishonor had taken place, and that the notice was designed to put that fact as the ground of the liability. It has consequently been held, that notices which omit to state the date, or time of payment, and that the holder looks to the drawer or indorser for payment, were sufficient. In addition to the above citations, see Lewis v. Gompertz, 6 Mees. & Welsb. Rep. 399; Houlditch v. Cauty, 4 Bing. New Cases, 411; Smith v. Boulton, 1 Hurl. & W. Rep. 3; Grugeon v. Smith, 6 Adol. & Ellis, Rep. 499; Cooke v. French, 10 Ib. 131, note; Robson v. Curlewis, 1 Carr. & Marsh. Rep. 378; Wathen v. Blackwell, 6 Eng. Jurist, 738; Stockman v. Parr, 7 Id. 886; Stocken v. Collins, 9 Carr. & P. Rep. 653; King v. Bickley, 2 Adol. & Ellis, New Rep. 419.

The rule adopted in the American courts is said to be far more liberal than that generally maintained in the English courts, and proceeds upon the ground that it is sufficient to state in the notice, that the bill or note has not been paid, and either expressly or by implication, that the holder looks to the indorser for reimbursement or indemnity. If, however, there be no statement of the dishonor of the paper, nor any thing from which it can fairly be implied, that a due presentment has been made, the notice would seem to be fatally defective. Story on Prom. Notes, § 354.

In addition to the description of the bill, the notice in question states, that the bill was protested by the notary for non-payment, on the day of its date, and that the holder looks to the responsibility of the defendant. It is not essential to a notice that it should affirm, that the bill was duly presented for payment, and that payment was refused. This is intended from the recital of the fact, that the bill was protested for non-payment. If the protest was irregular, or made without a due presentment, it

was competent for the defendant to have shown the fact, and thus have destroyed its effect and made the notice unavailing. This view may suffice to vindicate the ruling of the circuit court upon the eighth and ninth prayers for instructions.

We proceed now to consider, whether the fact that the defendant's indorsement was made on Sunday, will avail as a defence to the action. By a statute passed in 1803, it is enacted, that "no wordly business or employment, ordinary or servile work, (works of necessity or charity excepted,) &c. shall be done, performed, or practised by any person or persons within this state, on the Christian Sabbath, or first day of the week, commonly called Sunday; and every person being of the age of fourteen years, or upwards, offending in the premises, shall for every such offence forfeit and pay the sum of two dollars," &c. Clay's Dig. 592, § 1.

In New Hampshire there is a similar statute, which prohibits every person from performing "any labor, business or work of their secular callings, works of necessity and mercy only excepted," &c. Under this enactment it seems to be conceded, that all secular contracts made on the Sabbath are void, yet it has been held, that where a note was written and signed on Sunday, but not delivered to the payee, the contract was not completed—delivery being essential to make it operative. Clough v. Davis, 9 N. Hamp. Rep. 500. So the mere indorsement of a note or bill for the benefit of the maker or acceptor, does not become a contract binding upon the indorser until the maker or indorser has negotiated it. Sauerwein v. Brunner, 1 H. & G. Rep. 477.

The statute of 29 Car. 2, c. 7, § 1, prohibits every person from doing or exercising "any worldly labor, business, or work of their ordinary callings upon the Lord's day;" and under its provisions it has been held, that an indorsee may recover against the acceptor of a bill dated on a Sunday, when there is no evidence that the bill was excepted on that day. The court said, "it does not appear that any contract was completed on the Sunday, which the defendant was not competent to enter into, notwithstanding the statute; nor, assuming that there was, is it competent to the defendant who has been guilty of a breach of the law, to set up his

own misconduct as an answer to his acceptance in the hands of an innocent holder." Begbie v. Levy, 1 Tyrw. Rep. 130.

It is laid down by elementary writers, as well as in the adjudged cases, that a *bona fide* holder for value, without notice, is entitled to recover upon any negotiable instrument, which he has received before its maturity, notwithstanding any defect or infirmity in the title of the person from whom he derived it; although such person may have acquired it by fraud, or even by theft or robbery. The same doctrine is in general applicable to one thus becoming the holder of negotiable paper, where the note or bill, or the indorsement thereof, is founded on an illegal consideration. The law upon this point is founded in public policy, and there is no distinction between a case of illegality, where the consideration is tainted with moral crime, which is *malum in se*, or where it violates the positive prohibition of a statute, which is *malum prohibitum;* for in each case the innocent holder may be otherwise exposed to the most ruinous consequences, and the circulation of negotiable instruments would be materially obstructed, if not altogether stopped. The only exception is, where the statute creating the prohibition has, at the same time, either expressly or by necessary implication, made the instrument absolutely void in the hands of every holder, whether he has notice of the illegality or not. There are few cases in which any statute has created a positive nullity of such instruments. The most important seems to be the statutes against *gaming* and *usury.* Neither is it any defence, that the note or bill was known to the holder to have been made, drawn or endorsed for accommodation, as between the other parties, if he takes it *bona fide,* for value, before it becomes due. The reason is, that the object of accommodation paper is to enable the parties thereto, by a sale, or negotiation thereof, to obtain for it a free credit and circulation; and this object would be frustrated, unless the purchaser or other holder for value could hold such paper by as valid a title, as if it were founded in a real business transaction. In fact the parties to every accommodation note or bill, hold themselves out to the world, by their signatures, to be absolutely bound to every person who shall take the same

for value, to the same extent as if that value were personally advanced to them, or on their account, and at their request. Story on Prom. Notes, § 191 to 197; Smith's Mer. Law, H. & G. ed. 261 to 263, and citations in notes.

Chitty, in his Treatise on Bills, says, that unless the legislature has *expressly* declared that the illegality of the contract or consideration, shall make the security, whether bill or note, *void*, illegality of consideration will be no defence in an action at the suit of a *bona fide* holder, without notice of the illegality, unless he obtained the bill after it became due. Thus in an action by the indorsee against the maker of a promissory note, the defence insisted on was, that the note had been given for hits against the defendant in a lottery insurance. Lord Kenyon observed, that the innocent indorsee of a gaming note, or note given on an usurious contract, could not recover, but that in no other case could the innocent indorsee be deprived of his remedy on the note; and that a contrary determination would shake paper credit to the foundation. The ground upon which gaming and usury are made an exception, is, that the statutes declare the *securities void;* and the law in respect to these, under the influence of commercial policy, has been modified in England, and perhaps some of the States of the Union. Chit. on B. 9th Am. ed. 110 to 117. This distinction has been repeatedly recognized. Thus the statute of 7 Geo. 2, c. 8, makes *wagers* and *contracts* in nature of wagers, *&c. void*, yet it has been held, that as it does not avoid *bills, notes*, and *securities*, but only the *contracts*, a bill or note on such a contract is valid in the hands of a *bona fide* indorsee, receiving it without notice, before it was due. Day v. Stuart, 6 Bing. Rep. 109; 2 Man. & R. Rep. 422; Amory v. Merewether, 2 B. & Cresw. Rep. 573; Brown v. Turner, 7 T. Rep. 630; Steers v. Lashley, 6 T. Rep. 61; Aubert v. Maze, 2 Bos. & P. Rep. 374; Story on Bills, § 189, and note 2; 3 Kent's Com. 4th ed. 79, 80.

We have seen that the act of 1803, inhibits all "worldly business or employment, or servile work, (works of necessity or charity excepted,") and goes quite beyond the English statute, which applies to the business of one's "ordinary calling." Now the indorsement of a bill, and delivery of it to

the acceptor, to be used for his accommodation, is certainly " worldly business," although the acceptor may not negotiate it until Monday, or some subsequent day. The transaction on the part of the indorser, is not the mere writing his name, but includes an authority to the acceptor to negotiate. If the manual act of indorsement is not in itself the performance of " worldly business," it certainly becomes such when coupled with the authority to transfer; and is not the less so, though the authority be verbal, or can only be implied from the indorsement, and intrusting the paper to the acceptor. See Clough v. Davis, 9 N. Hamp. R. 500.

It has been repeatedly determined, that a penalty inflicted by statute upon the doing of an act, is equivalent to a prohibition, and a contract relating to it is void. See Shippey and another v. Eastwood, 9 Ala. Rep. 198, 200. Under the influence of this rule, it has been decided that a contract made on a Sunday is void, and a security founded on it, is not recoverable at the suit of a party to the illegal consideration. But as the act does not declare that both the contract and security are void, the authorities clearly indicate that a *bona fide* indorsee of negotiable paper, founded upon such a contract, who acquires it before maturity, without notice of the illegality, for value, may enforce its payment. See also as to contracts, &c. made on Sunday, Pierce v. Hill, 9 Port. Rep. 151; O'Donnell v. Sweeny, 5 Ala. Rep. 467; Dodson v. Harris, 10 Ala. Rep. 567; Butler v. Lee, 11 Ala. Rep. 885; Styles v. Smith, 12 Wend. Rep. 57; Drury v. DeFontaine, 1 Taunt. Rep. 131; 56 Law Lib. (top page,) 86; Smith v. Sparrow, 4 Bing. Rep. 84; Williams v. Paul, 4 M. & P. Rep. 532; Boynton v. Page, 13 Wend. R. 425; Tracy v. Jenks, 15 Pick. Rep. 465; Clap v. Smith, 16 Ib. 250; Lyon v. Strong, 6 Verm. Rep. 219; Fox v. Abel, 2 Conn. Rep. 541; Kepner v. Keefer, 6 Watts Rep. 231; Northup v. Foot, 14 Wend. R. 248; Blaxsome v. Williams, 3 B. & C. Rep. 232; Fennell v. Ridler, 5 B. & C. R. 406; Myers v. The State, 1 Conn. Rep. 502; Story on Con., 2d ed 543.

We come now to consider whether the plaintiff is a *bona fide* indorsee, without notice, for value, so as to preclude the defendant from setting up the defence of illegality in the in-

dorsement.   By the act of 1834, it is enacted, that "all contracts whatsoever, which may be made, to take directly or indirectly for the loan of any money, &c., above the rate of eight dollars for the forbearance of one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time ; and all bonds, contracts, covenants, conveyences, or assurances hereafter to be made, for the payment or delivery of any money, &c. so to be lent, on which a higher rate of interest is recieved or taken, shall be void and of no effect for the whole interest only: but the principal sum of money, $\&c.$, shall be recoverable upon all bonds, &c." This enactment declares, that the provisions of the act of 1819, so far as they are not repugnant, shall continue in force ; consequently the lender who took usury, was still liable to an action at the suit of the borrower or informer, as well as to a prosecution at the instance of the state.   These inflictions were the consequences of receiving usury, according to the statute of 1819, and are not inconsistent with the modifying act of 1834, (Clay's Dig. 589 to 591, § 1 to 10 ;) but they are repealed by an act passed in January, 1845.

The evidence recited in the bill of exceptions abundantly shows, that the bill declared on was given to the plaintiff in substitution and extension of a bill for the same amount, on which he had previously advanced money at a usurious rate of interest to the acceptor.   It does not appear that the original transaction was divested of the taint of usury in the renewal of the bill; but it is clearly inferrable that the plaintiff, in extending the time of payment, charged for the indulgence, interest beyond the legal rate.   But however this latter hypothesis may be, it is sufficient that the impurity in the inception of the contract, has not been purged, so as to divest the bill of usury.   Chit. on Bills, 9th Am. ed. 109 ; Story on Con. 2d ed. § 601 ; Wilkes v. Brummer, 2 McC. Rep. 178 ; Jones v. Jackson, at this term, and citations in opinion.

In Ramsdell and Brown v. Morgan, 16 Wend. Rep. 574, goods fraudulently obtained were deposited with an auctioneer, who made an advance upon them, and charged five per cent. besides the usual commissions:  *Held*, that the transaction was *usurious*, and for that reason the auctioneer could

not be considered a *bona fide purchaser*, in an action of *tro-ver*, brought against him by the party from whom the goods were obtained; although he was wholly innocent of the fraud. It was said by the court, that there was a solecism on the face of the expression, *a bona fide purchaser on usu-sury: Further*, "Where the sale of goods appears to the jury to be above all suspicion, we have protected it, notwithstanding the fraud of the vendor in obtaining them, if the fraud come short of a felony. In this we have gone beyond the English cases, which are cautiously restrained to the transfer of negotiable paper, as founded on the paramount interests of commerce. We have also gone beyond them in protecting a holder under a usurious indorsement, so far as to enable him to maintain an action, if there be no other defence against the note. The King's Bench cut off all chance of this kind to evade the statute. Chapman v. Black, 2 Barnw. & Ad. Rep. 588, and cases there cited; Lloyd v. Keach, 2 Conn. Rep. 175. We have not yet gone so far as to say that the immediate usurious purchaser is to be protected as a holder in good faith, as coming to the possession in the fair course of trade, and thus save him from all defence as between the original holders. We have, I think, gone far enough in both respects. One who took money on a contract prohibited by statute, was held liable to the true owner in Clark v. Shee, Cowp. 197, on the very ground taken here, that such an act cannot be called *bona fide*. Id. 200, 201." This reasoning is strikingly appropriate to the case before us, and perfectly defensible, at least, so far as it relates to negotiable paper.

Our statute, we have seen, explicitly declares, that all contracts for the loan of money, &c., by which a higher rate of interest than eight per cent. is reserved, as well as the securities founded upon such contracts, "shall be void and of no effect for the whole interest." Such contracts and securities are against the declared policy of the state, and in violation of law. True, the statute of 1834 does not visit upon the lender consequences so severe as that of 1819, which declared a forfeiture not only of the interest, but the principal also; and this latter enactment we have seen is still further divested of its harshness by the act of 1845. But under

Saltmarsh v. Tuthill.

each, the contract is alike illegal, and the difference in the extent of the penalty, it would seem, is immaterial to the present inquiry.

It is however insisted for the defendant in error, that as usury only avoids the contract and consequent security, to the extent of the interest, it can have no other effect in the present case, than to abate the recovery *pro tanto;* and to sustain this view, De Wolf v. Johnson, 10 Wheat. 367, has been pressed upon our attention. In that case, a bill was filed in the federal circuit court of Kentucky, to foreclose a mortgage executed in Rhode Island upon lands situated in the former state, and one of the questions was, whether, as the mortgage was usurious, and the security void as to the interest, according to the statute of Rhode Island, the plaintiff was entitled to a decree for the principal. It was conceded by the court, that chancery would not lend its aid to an illegal or unconscionable bargain—that the law of Rhode Island forbid the contract of loan for a greater interest than six per cent., and so far no court would lend its aid to recover such interest. But as it did not go farther and inhibit the recovery of the principal under any circumstances, the court could not add another to the penalties declared by the law itself, which were the loss of the interest, and a penalty to the amount of the whole interest, and one third of the principal, if sued for within a year. We are unable to perceive the application of this citation to the question we are now considering. There the mortgagor did not resist a decree of foreclosure upon the ground of *usury*, or for any other cause, but the defence was set up by subsequent incumbrancers. The court might very well (as it did) have disallowed the defence, for the reason that the defence of *usury* was personal to the borrower; and he being silent, it is difficult to perceive of any reason, either in law or morals, which would forbid a decree in favor of the mortgagee, to the extent of the principal at least. See Young v. Scott, 4 Rand. R. 415; Turpin v. Powell, et al. 8 Leigh's Rep. 93; Campbell v. Patterson, 11 Leigh's Rep. 113; Crawford v. Harvey, 1 Blackf. Rep. 382; Taylor v. Smith, 2 Hawks's Rep. 465; McBrayer v. Roberts, 2 Dev. Eq. Rep. 75.

52

It is laid down in general terms, that a statute may either expressly or impliedly prohibit or enjoin an act, and in either case, a contract in violation of its provisions is void. Story on Con. 2d ed., 406, 539, *et post*, and citations in notes ; Roby v. West, 4 N. Hamp. Rep. 285 ; Seidenbender v. Charles, 4 Sergt. & R. Rep. 159 ; Sharpe v. Teese, 4 Hals. Rep. 352 ; Favor v. Philbrick, 7 N. Hamp. R. 326 ; Carleton v. Whitcher, 5 N. Hamp. 196 ; Sharp v. Farmer, 4 Dev. & Bat. Rep. 122. See also, as to the effect of usury, both at common law and under the statutes, Story on Con. 2d ed. 518, *et post;* Lloyd v. Scott, 4 Pet. Rep. 205.

The question is not whether the defendant could defeat a recovery *in toto*, upon the ground of usury, for the statute is explicit, and only avoids the contract as it respects the interest ; but it is, whether the holder of negotiable paper, who became such under a usurious contract, is a *bona fide* proprietor in the usual course of business, so as to exempt the paper in his hands from a defence which would have been available against it, as between the original parties. The statement of this question seems to suggest a ready answer. A usurious contract, as we have seen, is violative of the expressed policy of the state, and although it may not be marked by that deep moral stain which was formerly supposed to attach to it, yet it must be considered as illegal or immoral, if for no other reason, because the law prohibits it. These are propositions which are founded in municipal justice, and to a great extent supported by established principles of ethics —they must command universal assent, and do not require the aid of further argument to illustrate them. See Lloyd v. Scott, 4 Pet. Rep. 224.

The plaintiff then, who has become the indorsee of the bill, by violating the positive provisions of a statute, cannot with any degree of propriety be said to be a *bona fide* holder in the usual course of trade. An enlightened morality requires a punctillious obedience to the legislation of the country and good faith enjoins an observance of the law in all human transactions. Integrity, in the most extended sense of the term, is the soul of commerce ; and if the *usual course of business,* in any community, among any class of men, or in any des-

cription of dealing, would set it at defiance, the law, ever jealous of its purity and dignity, would interpose, and withhold its sanction to a departure from moral and municipal right.

It is insisted by the counsel for the defendant in error, that the prayers for instructions were so framed as to require the court to refer to the jury the determination of legal questions, and for this reason, if no other, their refusal may be justified. We think this argument cannot be supported, at least in respect of all, or most of the charges asked. The prayers, as to the effect of the indorsement of the bill on Sunday, and the usurious contract under which the plaintiff acquired it, seem to be sufficiently explicit, without devolving upon the jury the duties of the judge. They distinctly call upon the court to declare the law, without forestalling or extending the inquiries of the jury.

This view answers the question presented by the bill of exceptions, not previously answerd, and shows, that if the plaintiff became the proprietor of the bill upon a usurious loan of money, that he is not a *bona fide* holder in the *regular course of trade;* and therefore the defendant is entitled to any defence which would have availed against the plaintiff, if the latter had been informed of such defence before he became the proprietor of the paper. We have seen, that upon the law of the case, the defendant might have successfully resisted a recovery, if the jury credited the proof adduced; and that the ruling of the circuit court denied the validity of the defence. The judgment is consequently reversed, and the cause remanded.

DARGAN, J., not sitting.