MYERS *against* THE STATE OF CONNECTICUT :

### IN ERROR.

The letting of a carriage for the conveyance of persons on *Sunday,* from a belief that it is to be used in a case of necessity or charity, though no such case in fact exists, is not an offence within the prohibition of the statute *October Session,* 1814. *c.* 17.

THIS was information, brought before the county court, on the statute,(*a*) for suffering and allowing *A. M.* and

(*a*) *October Session,* 1814. *c.* 17. This act contains the following provisions : " That no proprietor or proprietors, or driver of any coach, waggon, sleigh or other carriage, belonging to or employed in any line of stages or extra carriage, or proprietor or driver of any hackney coach, coachee, chaise, sleigh, or other pleasure carriage, shall suffer or allow any person or persons to travel, except from necessity or charity, in such carriage, within this state, on the *Sabbath* or *Lord's* day, on penalty that such proprietor or driver shall, on conviction thereof, pay a fine of twenty dollars for every such offence."

others to travel in a hackney coach owned by the defendant, from *New-Haven* to *Middletown*, on the *Sabbath-day*. The information averred, " that neither necessity nor charity was the cause of said *A. M.* and others travelling on said day, nor did the defendant suffer and allow said *A. M.* and others to travel and be conveyed in said carriage from necessity or charity, but did in fact suffer and allow of the same for the sole purpose of making gain to himself."

On the trial of the cause, on the plea of *not guilty*, the defendant offered evidence to prove, that his carriage, on the day stated in the information, was let by his driver to one Capt. *Smith*, who told the driver at the time, that he had just arrived from *Liverpool*, and hearing that his wife was sick at *Middletown*, wished to be transported home immediately ; that this statement was communicated by the driver to the defendant, who consented, under the circumstances, that his carriage might go ; that neither the defendant nor his driver, at that time, knew, or supposed that any other person than Capt. *Smith* was to go in the carriage ; that after the defendant so gave his consent, he did not, on that day, see the carriage or driver ; and that *A. M.* and others were invited to go in the carriage by Capt. *Smith* without the defendant's knowledge, and never paid the defendant or his driver any thing for their passage. The defendant thereupon contended, that Capt. *Smith* was the only one whom he suffered and allowed to go in his carriage, within the meaning of the statute ; and as to him, the defendant was excused on the ground that it was, and that he believed it to be, a case of necessity and charity. The court charged the jury, that so far as regarded *A. M.* and the other passengers, they would not be warranted in finding the defendant guilty, unless they should find from the evidence that they went in the carriage by the defendant's consent ; and that in regard to Capt. *Smith*, as it was admitted by the defendant that he suffered and allowed him to travel in his carriage, from *New-Haven* to *Middletown*, on the day stated in the information, it was incumbent on the defendant, if he justified such act as a case of necessity or charity, to prove by evidence on the trial, that a case of necessity or charity existed ; and that the representation of Capt. *Smith* to the driver did not in law amount to a justification, unless the same was proved to have been true when made.

*Hartford,*
June, 1816.

Myers
*v.*
State.

Hartford,
June, 1816.

Myers
v.
State.

The jury having returned a verdict of *guilty*, the defendant filed his bill of exceptions to the charge of the court, and thereupon brought a writ of error in the superior court; which was continued to the next term, for the purpose of taking the advice of the nine Judges, in the mean time, on the question of law.

The case was now submitted without argument.

SWIFT, Ch. J. The letting of a carriage on *Sunday*, on the ground of necessity or charity, is not prohibited by the statute. If then a man acts honestly on such principle, and really believes that the case of necessity or charity exists, he is not criminal. It is true, a man may be deceived and imposed upon by falsehood, and misrepresentation; yet if he verily believes that the case exists, and acts on that ground, it is as much a deed of charity in him, if the fact does not exist, as if it does. It is a letting of the carriage as a matter of charity. Unless this construction be adopted, a man may be convicted of a crime, when he had no intent to violate the law, and when his object was to perform a deed of charity conformable to law. This would oppugn the maxim that a criminal intent is essential to constitute a crime.

It is true, on this construction, attempts may be made to evade the statute; but in all cases it will be a question of fact to the jury whether the party acted under a serious impression of the truth of the representation made to him. If there be any appearance of collusion, any management to elude the statute, then the excuse ought not to avail; and by the exercise of a proper discretion, the violation of this law may commonly be prevented. But on a different construction, all works of charity would be prevented. If a man is bound to prove not only that he believed it to be an act of charity, but that the facts existed, otherwise he should be liable to be punished; there would be very great danger in performing the charity which the statute does not prohibit.

The court, then, in charging the jury that the facts constituting the act of charity must be proved to have existed, committed an error. They should have directed the jury, if they found that the defendant had reasonable ground to

believe from the representation made to him that the case of charity existed, and that he honestly acted under the impression of that belief, they ought to find him not guilty.

I am of opinion there is error in the judgment of the county court.

In this opinion TRUMBULL, EDMOND, SMITH, BRAINARD, BALDWIN, GODDARD and HOSMER, Js. concurred.

GOULD, J. In expounding penal statutes, it is an established rule, that the construction must be strict, as *against* the defendant, but liberal, in his *favour*. Recourse may, therefore, be had to the spirit, or reason, of the law, for the purpose of exempting from its operation, one, who is within the letter of it; but this, generally speaking, cannot be done, in order to bring within the penalty, one, who is not within the letter. Hence it results, as a general proposition, to which there have been but very few exceptions, that no man can be subjected to the penalty of a statute, unless he is within both the letter and spirit of it.

Now, that the defendant would not have been within the spirit, or reason, of the statute, upon the supposition, that he actually *believed* a case of necessity, or charity, to exist, seems obviously to follow, from that fundamental principle, as well of criminal law, as of natural justice, that, to render any act criminal, the *intention* with which it is done, must be so; or, in other words, the *will* must concur with the act. (4 *Blac. Com.* 20—4.) Upon this principle, it is, that idiots, lunatics, and infants under a certain age, are, in judgment of law, incapable of any offence whatever. Hence, also, *ignorance*, or *mistake*, in point of *fact*, (for ignorance of *law*, I admit, cannot be averred,) is, in all cases of supposed offence, a sufficient excuse. Thus, to use the words of Sir *W. Blackstone*, "If a man, intending to kill a thief, or house-breaker, in his own house, by mistake, kills one of his own family; this is no criminal action." (4 *Com.* 27.)

When, indeed, a *civil* remedy is sought, for a forcible injury, the intention of the defendant is not regarded, except for the purpose of enhancing, or mitigating, damages. For, in this case, the end, proposed by the law, is not the *punishment* of an *offender*; but the mere reparation of a private loss, or injury, to which the plaintiff has been subjected by

*Hartford,*
June, 1816.

Myers
*v.*
State.

the act of the defendant: And it is deemed just and reasonable, independently of any question of intent, that he by whose act a civil injury has been occasioned, should ultimately sustain the loss, which has accrued, rather than another. *Raym.* 468. If, therefore, in attempting to defend myself against an unlawful assault, in front, I *accidentally* strike, and injure an innocent person, behind me; I am clearly answerable for the injury, in a civil action of trespass. *Raym.* 468. 2 *Black. Rep.* 896. But it is equally clear, that I cannot be subjected *criminaliter:* For, *actus non facit reum, nisi mens sit rea. Raym.* ub. sup.

From this well know principle of criminal law, viewed in connexion with the rule for construing penal statutes, already mentioned, it seems impossible to maintain, that the direction of the county court to the jury was correct. The legislature has not, even by the rule of literal construction, made it penal, of course, for an owner, or driver, of a carriage, to let or lend it, to be used on *Sunday.* The offence, created by the statute, consists in his allowing any person to travel in his carriage, on that day, " *except from necessity, or charity;*" that is, except for the *purpose,* or with a *view,* of contributing to the relief of necessity, or to some office of charity. If, then, the defendant let his carriage, with this *view,* as must have been the case, if he did it, (as he claims that he did,) in consequence of his *believing* the representations made to him; he appears to me to be clearly within the reason of the exception. The instances in which a man, with the most innocent intentions, might, by a contrary construction, be punished under a law, which he wished most scrupulously to obey, are so numerous and obvious, that it is wholly unnecessary to suppose cases, by way of example. If those, who travelled in the carriage, deceived the defendant, and had no such excuse, as the law allows; they are, doubtless, guilty of an offence, and punishable for it. But, upon this supposition, the defendant, so far as he contributed to the crime, was but an *involuntary instrument.*

The objection, that this construction will facilitate evasions of the statute, is not, I think, very well founded, even in point of fact. The danger of collusion will always be known to the triers; and the probability of it, in any supposable instance, will be open to discussion. But, at any

rate, considerations of this kind ought never to influence a court where, as in the present case, a construction, dictated by them, would manifestly contravene the spirit of the law, as well as the universal, immutable principles of justice. I am of opinion, that the judgment of the county court ought to be reversed.

*Hartford,*
June, 1816.

Myers
*v.*
State.

Judgment to be reversed.