5   377
023   315

THE STATE OF NEVADA, RESPONDENT, *v.* T. S. GARD-
NER, APPELLANT.

CRIMINAL LAW—ISSUANCE OF FALSE LICENSE. Where a Deputy Sheriff having brought suit against certain persons for doing business without license, upon their settlement of the suit by paying costs and amount of license, gave them a paper written by his attorney and signed by himself purporting to be a license; and it appeared that he had no proper forms or blanks at the time, and that there was no fraud or fraudulent intention on his part further than indicated by the mere naked act: *Held*, that no criminal offense was com-

mitted under the statute making the issuance of such license felony. (Stats. 1864–5, 299, Sec. 74.)

CRIMINAL INTENT NECESSARY TO CONSTITUTE CRIME. The essence of a criminal offense is the wrongful intent, without which it cannot exist.

THE LETTER OF CRIMINAL STATUTES AS OPPOSED TO THE REASON. While the words of a criminal statute are the primary guide to its meaning, it is well settled that to authorize a conviction under it the case presented must not only come within its words, but also within its reason and spirit, and the mischief it was intended to remedy.

STATUTE AGAINST ISSUANCE OF FALSE LICENSES. The Legislature, in passing the statute against the issuance of licenses other than those properly issued to the Sheriff, (Stats. 1864–5, 299) did not intend such fearful consequences as a conviction for felony, and imprisonment in the State prison, upon the violation merely of the letter of the statute; and in a prosecution under it, a charge to the jury which entirely ignores any question of criminal intent is error.

APPEAL from the District Court of the Sixth Judicial District, Washoe County.

*H. M. Steele,* for Appellant.

*R. M. Clarke,* Attorney-General, for Respondent.

By the Court, WHITMAN, J.:

Appellant was indicted, tried, and convicted of a felony, under a statute of this State which provides that: " If either the County Treasurer, County Auditor, Sheriff, or any other person, shall issue, have in his possession with intent to circulate, or put into circulation, any other license than those properly issued to the Sheriff under the provisions of this Act, the person so offending shall be guilty of felony, and on conviction be sentenced to imprisonment in the State prison for a term of not less than one year nor more than four years." (Stats. 1864–5, 299, Sec. 74.)

The undisputed facts in evidence were that appellant as Deputy Sheriff and Collector of Licenses, had brought suit as by statute authorized against certain merchants doing business within his county without license ; that they had settled the suit by paying costs and amount demanded for license, and thereupon, he having no proper forms, had given them a paper written by his attorney, and signed by himself, purporting to be a license.   There was no pretense of any fraud, or fraudulent intention on his part, further

than indicated by the mere naked act. On the contrary, the District Judge trying the cause was so much impressed with the hardship of the case, that he combined with his sentence of one year's imprisonment in the State prison an earnest recommendation that appellant be pardoned, and restored to all the rights of citizenship, at the earliest possible moment.

This statement suggests an anomaly, opposed alike to reason, justice, and law. The error of the case consists in the too narrow view taken of the statute in question. The District Judge, while apparently regretting the necessity, felt himself compelled to construe the statute literally and technically, without reference to the general principles of criminal law. Thus he says in his charge to the jury: "When any person presumes to license such business transactions, otherwise than as the law directs, he is a breaker of the law, * * * the chief question being whether he issued the license described in the indictment. The gist of the offense charged is the *issuance* of the license as charged. * * * If, therefore, in considering the evidence and the law given you in Court, you find the defendant, T. S. Gardner, did issue a license other than one properly issued to the Sheriff under the provisions of the law I quoted to you in opening this charge, to N. J. Salisbury & Co., and at the town of Wadsworth, in the County of Washoe, State of Nevada, and did take and receive therefor the sum of seven dollars and fifty cents, as charged in the indictment, you will render a verdict of *guilty as charged in the indictment*." The italics are as in the record. The indictment charged a wilful, felonious, and fraudulent issuing.

It may be remarked here that receiving the money is no portion of the offense created by statute, and it is not impossible that the indictment is bad by reason of containing matter relative thereto, which may allege a separate and distinct offense under the same statute, but as this case presents a broader ground for decision, let it rest on that. It will be observed that any question of intent is carefully ignored as the Judge gave the law to the jury. He should rather have instructed thus: "Nothing short of the intent to do a forbidden thing will make a man criminal. Where such intent is wanting he commits no offense in law, though he does acts

completely within all the words of a statute which prohibits the acts, being silent concerning the intent. And there are cases in which something even more than this is necessary. For example: the English Statute 12, Geo. III, C. 48, Sec. 1, makes it felony to write any matter or thing liable to stamp duty upon paper upon which had previously been written some other matter so liable, before the paper has been again stamped, but makes no mention whether the intent must be a fraudulent one or otherwise. Yet it was ruled by Abinger, C. B., that the offense is not committed unless the intent is fraudulent. The doctrine is, that the statute is to be so construed in connection with the common law, which requires an evil intent to accompany the evil act, as to add in favor of the defendant this provision." (1 Bishop on Criminal Law, 3d Ed. 429.)

It would be monstrous that one guilty of no evil intent should incur the odium of proven felony; if such is the law, better be remitted to lawlessness. As is well remarked by the author above quoted: "It is therefore a principle of our legal system, as probably of every other, that the essence of an offense is the wrongful intent, without which it cannot exist." (1 Bishop on Criminal Law, 3d Ed. 370.)

While the words of a statute are the primary guide to its meaning, it is a well settled principle of criminal law that a given case must come not only within the words of a statute, but also within its reason and spirit, and the mischief it was intended to remedy; and so it is said that in favor of defendants: "Criminal statutes are both contracted and expanded." (1 Bishop on Criminal Law, 3d Ed. 259 and 272; 2 Leading Crim. Cases, 2d Ed. 178 and 181, Notes.)

Viewing the statute under consideration in the light of the general criminal law, it is impossible to believe that the Legislature proposed such fearful consequences upon the violation merely of the letter of the statute, and in so deciding the District Judge erred. For the error indicated, the judgment is reversed, and the cause remanded.

By LEWIS, C. J.:

I am compelled to dissent from the doctrine of the principal opinion in this case. The intent which is spoken of by authors and Judges as essential to constitute a crime is not necessarily an evil or wrongful intent beyond that which is involved in the doing of the prohibited act. That there will be no crime when the act which is made a crime is not intentionally or willfully done is undoubted; and it seems to me that it is equally clear that the willful doing of an act prohibited by the Legislature completes the offense without anything else being shown. Here, for example, the law makes it criminal for a person to issue any but such licenses as are properly delivered to the Sheriff by the Auditor. Is not the crime complete, when it is shown that a license not so issued to the Sheriff is put in circulation? What other intent can be required than the intent to issue a license other than such as is authorized by the statute? Must there be a showing not only that such license was issued, but also that it was issued with the intent to defraud the revenue? The statute does not make such intent an ingredient of the crime; if the Courts do it, they do not interpret, but mutilate, the law.

Cases of a similar character have frequently been before the Courts, and I think it is very generally held that the crime is complete when the act constituting the crime is shown to have been done, regardless of the intent with which it was done. Thus, in *The State* v. *Walls*, (7 Blackford, 572) where the defendant was indicted for carrying a concealed weapon under a statute making such act a crime, it was held that the fact that the weapon was carried simply for the purpose of exhibiting it as a curiosity, and not with any evil intent or purpose, constituted no defense. In that case there was certainly none of the evil mind which Mr. Bishop assures us must be an ingredient of every offense. Again, the *Brig Ann* (1 Gallison, 62) is another case strongly refuting the learned author's dictum. An embargo had been laid on the ports of the United States. The brig was libeled for a violation of the embargo. But it was shown that the master did not know of the embargo, and that it was impossible for him to have known it at the time he sailed, because the news of the passage of the Act could

not have reached the port whence he sailed—he having sailed from Newburyport on the day following the passage of the law by Congress ; but this utter ignorance of the fact that the act which he was doing was prohibited, and even the impossibility of knowing it, was held no defense.

So in *Regina* v. *Woodrow*, (15 Meeson & W. 404) upon a statute which imposed a penalty of two hundred pounds upon any person having in his possession adulterated tobacco, it was held in the Court of Exchequer that the defendant was amenable to the penalty, although it appeared that he purchased the tobacco as genuine, and had no knowledge or cause to suspect that it was adulterated. It is, also, well known that all Acts of Parliament take effect from the first day of the session, even if not adopted until the last day; and thus a person may be engaged before and during the session in the doing of an act entirely innocent, but at the last day an Act is passed making it criminal, and thus he may be indicted and convicted for doing that which was entirely innocent, morally and legally, when done. Such cases have frequently occurred, and still that fact has never been held by the English Judges to be a defense, on the ground that there was no evil mind or intent, although there certainly could not be at the time the act was done. The method pursued in such cases has always been to petition the Executive to pardon the offender, and not to add to or take from the law.

The cases referred to by Bishop, in support of his doctrine, that there must be an evil purpose other than that resulting from the willful doing of the act prohibited, before one can be guilty of a crime, generally do not support the text. They simply hold that there must be a willful or intentional doing of the act itself. As for example, the case of *Myers* v. *The State of Connecticut*, (1 Conn. 502) where the defendant was indicted for letting a carriage on the Sabbath under a statute prohibiting such act, except when it was to be used for charity or from necessity, the showing that the defendant was informed and believed that the hiring was for a charitable purpose was sufficient proof that he did not willfully or intentionally violate the statute, or do the prohibited act. Such is, however, not this case. It can hardly be said that the defendant

did not intentionally or willfully do the very act prohibited by the statute.

The defendant in this case may be morally as innocent as if he had not done the act at all, and for this reason he should and doubtless would be pardoned were the penalties of the law enforced against him by the Courts. That is the better method and most proper time for the interposition of compassion against what seems the harshness of the law.

I am constrained to dissent from the majority opinion.