[No. 1479.]

STATE OF NEVADA, RESPONDENT, *v.* C. H. ZICHFELD, APPELLANT.

MARRIAGE—AT COMMON LAW—BY CONTRACT—STATUTORY PROVISIONS, DIRECTORY.—An act entitled "An act relating to marriage and divorce" (Gen. Stats. 471, *et seq.*) provides that marriage is a civil contract, to which the consent of parties, capable in law of contracting, is essential. The act contains provisions requiring a license, directing how and by whom marriages may be celebrated, or by whom persons may be joined in marriage, and prescribing other regulations in reference thereto, but contains no express clause of nullity, making void marriages contracted by mutual consent *per verba de præsenti*, except a prior license is obtained, or solemnization had, in accord ance with its provisions: *Held*, that such provisions are formal and directory, and do not render void a common-law marriage by contract *per verba de præsenti*.

CRIMINAL LAW—BIGAMY—COMMON-LAW MARRIAGE.—Defendant was married in 1893 to S. by written contract, without the services of any of the persons authorized by the statutes to join persons in marriage. Subsequently the parties separated by mutual consent, and thereafter the defendant, while he was so married and knowing that the said S. was still alive, was formally married to L. by a justice of the peace of Washoe county, this state: *Held*, that the marriage to S. was a valid marriage and that the subsequent marriage to L. constituted bigamy in defendant.

IDEM—INTENT, WHEN ELEMENT OF CRIME.—Where a specific intent is required by statute to constitute the crime, such specific intent enters into the nature of the act itself, and must be alleged and proved beyond a reasonable doubt.

IDEM—WHEN INTENT NOT ELEMENT OF CRIME.—When the statute forbids the doing of a certain thing, and is silent concerning the intent with which it is done, a person who does the forbidden act is not guiltless because he has no wrongful intent beyond that which is involved in the doing of the prohibited act. (*State* v. *Gardner*, 5 Nev. 377, overruled.)

IDEM—BIGAMY—CRIMINAL INTENT—EVIDENCE.—Section 127 of "An act concerning crimes and punishments" (Gen. Stats. 4673) provides that bigamy consists in having two wives or two husbands at the same time, knowing that the former husband or wife is still alive, and that nothing contained in the section shall extend to any person or persons whose husband or wife shall have been continually absent from such person or persons for five years prior to the second marriage, and he or she not knowing such husband or wife to be living within that time; or to any lawfully divorced person, or to any person where the former marriage has been by lawful authority declared void: *Held*, that, in a prosecution for bigamy, evidence was not admissible to show that defendant, by his second marriage, had no criminal intent, he believing that the first marriage had been annulled by agreement between him and his wife.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney*, District Judge:

C. H. Zichfeld was convicted of bigamy, and appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Curler & Curler*, for Appellant:

I. Under our law no person, other than a minister of any religious society or congregation within this state who has obtained a license for that purpose, or any judge of the district court in his district, or justice of the peace in his county, is authorized to join persons together as husband and wife. (Gen. Stats. 473, 481, 486.)

II. That the legislature of the state of Nevada did not intend to recognize what is known as common-law marriages is manifested by the provision of the act relating to marriage and divorce. Section 5 of said act (Gen. Stats. 474) provides that previous to persons being joined in marriage a license shall be obtained for that purpose from the county clerk of the county where the persons, or one of them intending to be married, reside; and further provides that the clerk shall not issue a license to persons under age, without the consent of the parent or guardian personally given before the clerk or certified to under the hand of said parent or guardian, attested by two witnesses.

III. In the case at bar the defendant and Sophia Koser did not procure any license previous to making the contract testified to by Mr. Julien, neither did the parties declare in

the presence of a judge, minister or magistrate and attending witnesses that they took each other as husband and wife. These are formalities which defendant claims to be absolutely necessary to constitute a valid marriage in the state of Nevada,    (Gen. Stats. 474–476.)

IV.    The provision of the statute, making the exception that all marriages shall be deemed to be valid, although the ceremony is performed by a person not authorized to perform it, and prescribing how marriages shall be solemnized, precludes the contracting of the relationship in any other manner than as provided, the legislature, having made a provision specially legalizing marriages in certain excepted cases, must be held to have contemplated all others not entered into according to the manner provided for by statute, and not within the exception, as void. (Gen. Stats. 482–486; *Beverlin* v. *Beverlin*, 29 W. Va. 732; *Com.* v. *Munson*, 127 Mass. 466; *Norcross* v. *Norcross*, 29 N. E. Rep. 506; *Dunbarten* v. *Franklin*, 19 N. H. 257; *In re McLaughlin's Estate*, 30 Pac. Rep. 651; *Follansbee* v. *Wilbur*, 44 Pac. Rep. 262; *Stans* v. *Bailey*, 37 Pac. Rep. 316.)

V.    The records of the case further disclose that upon the trial of the case the court excluded a contract offered to be introduced in evidence by the defendant purporting to sever all of the marital relations existing between defendant and Sophia Koser, which contract was drawn by T. V. Julien, the party who drew the first contract prior to the marriage of the defendant to Lauretta Bosford.    The defendant contends that the court erred in refusing to permit the introduction of that contract, for the reason that it was admissible for the purpose of showing that there was no intent on the part of defendant to commit a crime.

*F. H. Norcross*, District Attorney, for Respondent:

I.    The marriage by contract of the defendant C. H. Zichfeld and Sophia Koser, made in May, 1893, and described in the evidence, was a valid and binding marriage.    (*Meister* v. *Moore*, 96 U. S. 76–83; *Hutchens* v. *Kimmell*, 31 Mich. 126; Am. & Eng. Ency., vol. 14, 514; *Graham* v. *Bennet*, 2 Cal. 503; *Sharon* v. *Sharon*, 75 Cal. 1–25; *Post* v. *Post*, 70 Ill. 484; *Cartwright* v. *McGown*, 121 Ill. 388; *Blanchard* v. *Lambert*, 43

Ia. 228; *State* v. *Worthington*, 23 Minn. 528; *Dyer* v. *Brannock*, 66 Mo. 391; *Tenton* v. *Reed*, 4 Johns. (N. Y.) 52; *Rose* v. *Clark*, 8 Paige (N. Y.) 573; *Carmichael* v. *State*, 12 Ohio St. 553; *Mathews* v. *Phœnix*, 23 Am. L. R. 401; Bishop on Marriage and Divorce, 5th ed., sec. 283, 218, 227, 229; *Hayes* v. *People*, 25 N. Y. 390.)

II.   To support an indictment for bigamy, it is a sufficient marriage in fact that the parties agree to be husband and wife and cohabit and recognize each other as such.   (*Hayes* v. *People*, 25 N. Y. 390; *Com.* v. *Mash*, 7 Met. (Mass.) 472; Bishop, Statutory Crimes, secs. 592–593; *Carmichael* v. *State*, 12 Ohio, 553.)

III.   Where an act forbidden by law is intentionally done, the intent to do the act is the criminal intent which imparts to it the character of an offense.   (Am. and Eng. Ency. Law, 372; 4 Am. and Eng. Ency. Law, 673, 674, 690, 691; *Hayes* v. *People*, 25 N. Y. 390; *Com.* v. *Crowley*, 40 N. E. 862; *Com.* v. *Mash*, 7 Met. 472; *Com.* v. *Thompson*, 2 Allen, 23; *Davis* v. *Com.*, 13 Bush. (Ky.) 318; *State* v. *Whitcomb*, 52 Ia. 85; *State* v. *Goodenow*, 65 Me. 30; *Hood* v. *State*, 56 Ind. 263; *People* v. *Smith*, 20 Hun (N. Y.) 414; Wharton's Crim. Evidence, secs. 723–725, and citations; Wharton's Crim. Law, 8th ed., sec. 88.)

IV.   Ignorance of statutory law is criminal negligence. (*State* v. *Goodenow*, 65 Me. 30; *Culbreth* v. *Culbreth*, 7 Ga. 64; *Dickens* v. *State*, 30 Ga. 383; *U. S.* v. *Fourteen Packages*, Gilp. C. C. 235.)

By the Court, BONNIFIELD, J.:

The appellant was convicted in the district court of the second judicial district, in and for Washoe county, of the crime of bigamy, and appeals from the judgment of the court and order denying his motion for new trial.   The following facts are not disputed:   In the year 1893 in said county the appellant was married to Sophia Koser by written contract, without the services of any of the persons authorized by the statute to join persons in marriage, or to solemnize marriage.   Subsequently, and in 1895, the parties separated by mutual consent and the appellant, while he was so married to Sophia Koser and knowing that said Sophia was still alive, was formally married to Lauretta

Bosford by J. J. Linn, a justice of the peace of Washoe county.

There is no contention as to the sufficiency of said first marriage to constitute a valid marriage at the common law; but counsel for appellant contend that our statute concerning marriages has superseded the common law and that all marriages not entered into in conformity to the provisions of the statute are null and void. It is well settled that under the common law the marriage relation may be formed by words of present assent (*per verba de præsenti*), and without the interposition of any person lawfully authorized to solemnize marriages or to join persons in marriage.

The first act passed by our territorial legislature was an act entitled "An act adopting the common law." At the same session of the legislature it passed the act relating to marriages, of which the following is section 1: "That marriage, so far as its validity in law is concerned, is a civil contract to which the consent of the parties, capable in law of contracting, is essential." Although this act contains provisions requiring a license, directing how and by whom marriages may be celebrated, or by whom persons may be joined in marriage, and prescribing other regulations in reference thereto, the statute contains no express clause of nullity, making void marriages contracted by mutual consent *per verba de præsenti*, except a prior license is obtained, or solemnization had in accordance with its provisions.

*Authorities:* The supreme court of the United States in *Meister* v. *Moore*, 96 U. S. 76 (opinion by Justice Strong), in construing the Michigan statute, which is substantially the same as ours, said: "It [the instruction] certainly withdrew from the consideration of the jury all evidence, if any there was, of informal marriage by contract, *per verba de præsenti*. That such a contract constitutes a valid marriage at common law there can be no doubt, in view of the adjudications made in this country from the earliest settlement to the present day. Marriage is everywhere regarded as a civil contract. Statutes in many states, it is true, regulate the mode of entering into the contract, but they do not confer the right. Hence they are not within the principle that, where a statute creates a right and provides a remedy for its enforcement,

the remedy is exclusive.   No doubt a statute may take away a common-law right, but there is always a *presumption* that the legislature has no such intention, unless it be plainly expressed.

"A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner, but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by license, or publication of bans, or attested by witnesses.   Such formal provisions may be construed as merely directory instead of being treated as destructive of a common-law right to form the marriage by words of present assent.

"And such, we think, has been the rule generally adopted in construing statutes regulating marriage.   Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwithstanding the statutes, unless they contain express words of nullity.   *   *   *   In many of the states, enactments exist very similar to the Michigan statute, but their object has manifestly been, not to declare what shall be requisite to the validity of a marriage, but to provide a legitimate mode of solemnizing it.   They speak of the celebration of its right rather than of its validity, and they address themselves principally to the functionaries they authorize to perform the ceremony.   In most cases the leading purpose is to secure a registration of marriage, and evidence by which marriages may be proved; for example, by certificate of a clergyman or magistrate or by exemplification of the registry.   In a small number of the states, it must be admitted, such statutes have been construed as denying validity to marriages not formed according to the statutory directions.   *   *   *

"As before stated, the statutes are held merely directory, because marriage is a thing of common-law right, because it is the policy of the state to encourage it, and because, as has sometimes been said, any other construction would compel holding illegitimate the offspring of many parents conscious of no violation of law.

" The Michigan statute differs in no essential particular

from those of other states, which have generally been so construed. It does not declare marriages void which have not been entered into in the presence of a minister or magistrate. It does not deny validity to marriages which are good at common law. The most that can be said of it is that it contains implications of an intention that all marriages, except some particularly mentioned, should be celebrated in the manner mentioned.  *   *   *

. "The sixth section declares how they may be solemnized. The seventh describes what shall be required of justices of the peace and ministers of the gospel before they shall solemnize any marriage. The eighth section declares that in every case, that is, whenever any marriage shall be solemnized in the manner described in the act, there shall be at least two witnesses present besides the minister or magistrate. The ninth, tenth, eleventh, sixteenth and seventeenth sections provide for certificates, registers and exemplifications of records of marriage solemnized by magistrates and ministers. The twelfth and thirteenth impose penalties upon justices and ministers joining persons in marriage contrary to the provisions of the act, and upon persons joining others in marriage, knowing that they are not lawfully authorized so to do. The fourteenth and fifteenth sections are those upon which most reliance is placed in support of the charge of the circuit court. The former declares that no marriage solemnized before any person professing to be a justice of the peace or minister of the gospel shall be deemed or adjudged to be void on account of any want of jurisdiction or authority in such minister or justice, provided the marriage be consummated with full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage. This, it is argued, raises an implication that marriages not in the presence of a minister or justice, or one professing to be such, were intended to be void. But the implication is not necessarily so broad. It is satisfied if it reach not beyond marriages in the mode allowed by the act of the legislature. The fifteenth section exempts people called 'Quakers' or 'Friends' from the operation of the act.  *   *   *   As to them the act gives no directions. From this, also, an inference is attempted to be drawn that

lawful marriages of all other persons must be in the mode directed or allowed [by the statute]. We think the inference is not a necessary one. Both these sections, the fourteenth and the fifteenth, are to be found in the acts of other states, in which it has been decided that the statutes do not make invalid common-law marriages."

We think that in the above opinion by Justice Strong a clear and proper construction of the statute is given.

Bishop says: "It is well observed by Lord Stowell that in a state of nature no forms need be added to an agreement of present marriage to render it complete. In the opinion of the Scotch people and of the people of a part of our states, marriage, emphatically a thing of nature, is properly regulated by the law of nature. But in England, in other of our states, and largely in Continental Europe, civilization has undertaken to refine and improve nature's law by denying marriage except under specified forms and ceremonies. The consequence of which is that shrewd rakes entrap simple girls into nature's marriage, then at their whim or exalted pleasure cast them off, and leave a family of children under the disabilities and disgrace of bastardy." (1 Bish. Mar., Div. and Sep., secs. 385–386.)

Bishop, after an extended review of the authorities on the subject which he cites, restates the doctrine recognized by the courts of nearly all the states having statutes similar to ours, as follows: "Any required formal solemnization of marriage is an impediment to entering into it; therefore, since marriage is favored in law, statutory provisions establishing forms are to be strictly intrepreted, not being encouraged by the courts. In the absence of any statute or local usage controlling the question, only the consent treated of in our last two chapters is indispensable to the constitution of marriage; and legislation commanding formalities, even punishing those who celebrate marriage contrary to its provisions, or punishing the parties themselves, will not render a marriage had in disregard of it void, unless the statute expressly or by necessary implication declares this consequence. But it is otherwise of a statute which authorizes the intermarriage of persons before incompetent, for in this case there is no common law to fall back upon. And such parties must strictly

conform to the legislative direction to render their marriage valid. In the ordinary case, wherein the common law may be relied on except as excluded by the statute, only the particular things which the statute declares to be nullifying if omitted need be observed—all the rest being directory, and non-compliance immaterial." (Id., sec. 449.)

In an elaborate review of the authorities and an exhaustive discussion of the question now under consideration, the supreme court of Missouri, in *Dyer* v. *Brannock*, 66 Mo. 391, held that a marriage by contract, without solemnization before a minister of the gospel or an officer of the law was valid, the statute concerning marriages containing no positive declarations that a marriage not so solemnized shall be void. Numerous other authorities might be cited to the same effect as the above, but we deem it unnecessary.

In *Fitzpatrick* v. *Fitzpatrick*, 6 Nev. 63, this court has construed section 2 of our statute, and the reasoning of the court is applicable to the construction of all the sections relied on by counsel for appellant, and by the authorities holding that the statute nullifies common-law marriages. In that case the plaintiff brought suit to have her marriage declared annulled on the ground that she was under age and the consent of her parent or guardian had not first been obtained. Section 2 provides that "male persons of the age of eighteen years and female persons of the age of sixteen years * * * may be joined in marriage; *provided always*, that male persons under the age of twenty-one years and female persons under the age of eighteen years shall first obtain the consent of their fathers" or mothers or guardians, respectively, "and *provided further*, that nothing in this act shall be construed so as to make the issue of any marriage illegitimate, if the person or persons shall not be of lawful age." The plaintiff's counsel contended that "the plaintiff, by reason of want of age, was incapable of contracting a valid marriage, except with the consent of her parent or guardian." He argued: "The statute provides that marriage by females under the age of eighteen shall be contracted only with the consent of their parents or guardian, and a penalty is imposed on the county clerk who shall issue a license for the marriage of such minor without such consent. * * * Besides, the statute of Nevada

is peculiar in providing that nothing in it shall be construed to make the issue of any marriage illegitimate, if the persons shall not be of lawful age. Evidently the legislature intended by this act that all marriages entered into except as provided in said act should be void. If this was not their intention, then that portion of the act which provides against bastardizing the issue of such marriage is mere surplusage and without meaning, for the reason that it would be the merest folly to provide by statute that issue of a valid marriage shall not be illegitimate."

The court held, however, that: "That proviso did not indicate any such intent as claimed by counsel, as it only relates to issue of persons not of lawful age, that is, eighteen and sixteen years in males and females, respectively. * * * That by the common law, and the statute law of this state, marriage is held to be a civil contract. To render the contract valid, the parties must be able and willing to contract. At common law the age of capacity to make the contract of marriage was fixed at fourteen years for males, and twelve years for females. * * * Marriage before such age is voidable at the election of either party, on arriving at the age of consent, if either of the parties be under age when the contract is made. (2 Kent, 44.) The statute of this state does not alter the common law, save by substituting the ages therein named for the common-law ages, and it has generally, if not universally, been held, in construing similar statutes, that, in the absence of any provision declaring marriage made in violation of the statutory proviso void, it was a binding and valid contract, upon the theory that persons of the consenting or lawful age, voluntarily entering into a contract, should be held thereto, precisely as they would be held to any other lawful contract voluntarily assumed at the legal age or upon majority." It will be observed that the court held, in effect, that in the absence of any provision of the statute declaring the marriage of a minor, without the consent of parent or guardian, void, the marriage was valid, notwithstanding the explicit requirements of the statute that such consent shall first be obtained.

Our statute does not expressly, nor by necessary implica-

tion, as we view it, render a marriage had in disregard of its prescribed formalities void. We are to presume that the legislature knew that marriages by contract are valid at common law; that they have thus been entered into from time immemorial, and are liable to continue to be so contracted, and if the legislature intended to prohibit such marriages and render them void, and thus entail upon the parties conscious of no wrong-doing, and their children, such evil consequences as must necessarily result therefrom, it would have expressed such intent in such terms as need no construction, and about which even laymen could have no doubt, and would thus have given due notice to all of the invalidity of informal marriages entered into simply by contract.

It seems to us clearly that the legislature, by the terms used in the first section of the marriage act, intended to specifically recognize the common law in respect to marriages. It therein declares "that marriage, so far as its validity in law is concerned, is a civil contract to which the consent of the parties capable in law of contracting is essential." If the legislature had intended that compliance with any of the provisions of the succeeding section should also be essential to its validity in law, we are of opinion it would have so expressed itself, and not left the definition of a valid marriage in law "a civil contract to which the consent of the parties capable in law of contracting is essential."

We are of opinion that the subsequent sections were enacted for the purposes named above in the opinion delivered by Justice Strong, and for the additional purpose of accommodating the views of those who do not believe in marriages by contract simply, and would not be satisfied with entering into the marriage relation except by some mode prescribed by the statute, and for the purpose of giving to the forms and ceremonies in practice among many classes statutory recognition.

While any form or ceremony the parties interested may choose is recognized by the statute, no particular form is required. The elements essential to a common-law marriage are required—a contract *per verba præsenti*. In the language of the statute, the parties "shall declare that they take each

other as husband and wife," not necessarily by word of mouth, but in some manner to declare such assent. From the great preponderating weight of authority and reason, we are of opinion that all other provisions of the statute are directory, so far as the validity of the marriage is concerned, and that a marriage by contract between parties competent to enter into that relation with each other is valid under our statute.

We, therefore, hold that the said marriage of the appellant to Sophia Koser is valid.

*Errors Assigned:* On the 14th day of September, 1895, about three weeks before the alleged second marriage of the defendant, he and his first wife, Sophia, entered into a written agreement between themselves in settlement of their property rights and agreed to then and there separate, and further agreed in terms as follows: "The parties hereto, each with the other, covenant and agree to sever their marital relations, and by these presents do sever their marital relations." Counsel for defendant offered to introduce this agreement in evidence, to which the district attorney objected on the ground that it was incompetent, irrelevant and immaterial. The court sustained the objection. This ruling is assigned as error. Counsel argues, in substance, under the authority of *State* v. *Gardner*, 5 Nev. 377, that the agreement was proper evidence to go to the jury, as tending to show that there was no criminal intent on the part of the defendant in entering into the second marriage, he believing that the agreement had annulled the first marriage.

*Criminal Intent:* The rule adopted by the majority of the court in the said Gardner case, to the effect that where a statute forbids the doing of a certain thing, and is silent concerning the intent with which it is done, a person commits no offense, in law, though he does the forbidden thing, within all the words of the statute, if he had no evil or wrongful intent beyond that which is involved in the doing of the prohibited act, is disapproved, and the decision to that effect is hereby overruled. We recognize the well-settled rule that, where a specific intent is required by statute to constitute the crime, such specific intent enters into the nature of the act

itself, and must be alleged and proved beyond a reasonable doubt.

The statute under which the defendant was indicted, tried and convicted provides: "Bigamy consists in the having of two wives or two husbands at one and the same time, knowing that the former husband or wife is still alive. If any person or persons within this state, being married, or who shall hereafter marry, do at any time marry any person or persons, the former husband or wife being alive, the person so offending shall be punished. * * * Nothing herein contained shall extend to any person or persons whose husband or wife shall have been continually absent from such person or persons for the space of five years prior to the said second marriage, and he or she not knowing such husband or wife to be living within that time. Also, nothing herein contained shall extend to any person that is, or shall be, at the time of such marriage, divorced by lawful authority from the bonds of such former marriage, or to any person where the former marriage hath been by lawful authority declared void." There is no intent involved in this case except the doing of the thing forbidden to be done by the statute.

"Whatever one voluntarily does, he, of course, intends to do. If the statute has made it criminal to do any act under peculiar circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it." (*Commonwealth* v. *Mash*, 7 Metcalf, 472.)

"There was the intent to marry a second time, not knowing the husband to be dead, and who had been absent for about one year only, and this is the criminal intent which is of the essence of the offense." (67 Ala. 84.)

"Upon indictment for selling intoxicating liquor to a minor, without authority from his parents or guardian, it does not matter that the defendant did not know that such person was a minor. He is bound to know whether such person is a minor or not." (*Farmer* v. *People*, 77 Ill. 322.)

A statute of North Carolina authorized the sheriff to issue a license to sell liquor by retail, only on an order of the board of commissioners, upon application of the person seeking the license, and made it a criminal offense to retail liquor without a license. On the 1st day of January, 1883,

the board, upon application of Voight, ordered the license to issue, and on the same day revoked the order. Notwithstanding this revocation, the sheriff afterwards, and on the last day of said January, issued the license, Voight knowing when he received the license that the order for its issuance had been revoked. Voight was prosecuted criminally for retailing liquor without a license. The trial court charged the jury "that if the jury were fully satisfied that the license was issued after the 1st of January, 1883, and defendant knew it was subsequent to the revoking order, and thereafter sold liquor as charged, * * * they should convict, notwithstanding, at the time of the act, he had possession of the license." The supreme court approved the instruction, and said: * * * "Nor is it a defense to a criminal accusation that the defendant did not intend to violate or evade the law, or supposed he had a right to sell, when he intended to do, and did do, the criminal and forbidden act. The criminal intent is inseparably involved in the intent to do the act which the law pronounces criminal." (*State* v. *Voight*, 90 N. C. 741.)

The provisions of a statute in Massachusetts are as follows: "Whoever falsely makes * * * any certificate of nomination or nomination paper, or any part thereof, or files any certificate of nomination or nomination paper knowing the same, or any part thereof, to be falsely made * * * shall be punished," etc. Connelly was convicted under this statute, first, for falsely making nomination papers; second, for filing the same. On appeal, the supreme judicial court held: "No fraudulent intent is necessary to constitute the offense. It is immaterial that the defendant did not intend to break the law. It is enough that he did the things made offenses by the statute." (*Commonwealth* v. *Connelly*, 40 N. E. 862.)

We cite the following additional authorities on the question of intent, which are in line with the ones given above: *State* v. *Walls*, 7 Blackf. 572; *The Brig Ann*, 1 Gall. 62; *Regina* v. *Woodrow*, 15 Mees. & W. 404; *Myers* v. *State*, 1 Conn. 502; *State* v. *Goodenow*, 65 Me. 30; 52 Iowa, 85; *Hood* v. *State*, 56 Iowa, 263; *Davis* v. *Commonwealth*, 13 Bush. 318; Wharton's Crim. Ev., 8th ed., sec. 725, and cases there cited.

We, therefore, hold that the court did not err in excluding said agreement of the appellant and Sophia Zichfeld.

This opinion disposes of all the alleged errors; and, finding no error of the court in the record, the judgment and order appealed from are affirmed.